### BARTLETT v McDONALD

Ohio Appeals, 7th Dist, Mahoning Co

No 2348. Decided March 26, 1937

Peter B. Betras, Youngstown, for plaintiff-appellee.

Manchester, Ford, Bennett & Powers, Youngstown, for defendant-appellant.

## OPINION

By NICHOLS, J.

In the Court of Common Pleas, Mahoning County, plaintiff appellee recovered a judgment against defendant-appellant for injuries occasioned by an automobile collision at the intersection of Broadway and Elm Streets in the city of Youngstown on December 31, 1932. At the time of the collision appellee was operating a bread truck of the Wehle Baking Company in an easterly direction on Broadway, and the appellant was operating his automobile in a southerly direction on Elm Street.

Elm Street extends north and south, and south of its intersection with Broadway, is about sixty feet wide, and north of its intersection with Broadway is about thirty feet wide. Broadway extends in an easterly and westerly direction, intersecting Elm Street at right angles, and is sixty feet wide west of Elm Street and thirty feet wide east of Elm Street.

There is a "stop" sign on Elm Street, both northerly and southerly of its intersection with Broadway, and there are no "stop" signs on Broadway.

The bread truck operated by appellee and the automobile operated by appellant arrived at the intersection at approximately the same time. The question involved is that of the right of way. Appellee claimed that the bread truck had the right of way because approaching from the right of appellant's automobile; appellant claimed the right of way on the ground that

the council of the city of Youngstown, by an ordinance adopted in 1925, had designated Elm Street as a main thoroughfare, and in the ordinance had provided that vehicles proceeding upon main thoroughfares should have the right of way over vehicles approaching intersecting streets not designated as main thoroughfares.

One of the claimed grounds of negligence set forth in the petition of plaintiff was:

"Defendant failed to stop his automobile before entering the intersection of Elm and Broadway."

But one claim of error · is made on behalf of appellant which is that the trial court erred in refusing to give to the jury before argument the following written instruction requested by counsel for Mr. McDonald:

"The court says to you as a matter of law that the 'stop' signs on Elm Street at this intersection are not legally designated 'stop' signs, and there was no obligation on the defendant to stop his car by reason of the presence of these signs."

The following facts are shown by the record and conceded in argument: In 1925 the council of the city of Youngstown duly passed an ordinance designating Elm Street at the place where this collision occurred as a main thoroughfare. The council did not at that time or since cause "stop" signs to be erected on Broadway, the secondary street, but "stop" signs were located on Elm Street, both north and south of the intersection. At the time of the adoption of the ordinance by the city, it was provided by §6310-32, GC, as follows:

"Local authorities shall have the right to designate by ordinance or resolution additional main thoroughfares and to designate what vehicles shall have the right of way at intersections of main thoroughfares; provided, however, that legible and appropriate signs be erected not nearer than 100 feet from the intersection along all road (roads) and highways intersecting such main thoroughfares."

Subsequent to the adoption of the ordinance and prior to the collision, §6310-32, GC, had been amended by the Legislature and at the time of the collision provided as follows:

"Local authorities shall have the right to designate by ordinance or resolution additional main thoroughfares and to designate what vehicles shall have the right of way at intersections of main thoroughfares; provided, however, that legible and appropriate signs be erected along the roads and highways intersecting such main thoroughfares, and that such signs outside the corporate limits of a municipality, shall not be nearer than one hundred feet from such intersection."

The question then arises, was Elm Street, at the time of the collision, a main thoroughfare whereby Mr. McDonald had the right of way; that is, the right to proceed uninterruptedly, in a lawful manner, across the intersection of Broadway, as against the vehicle approaching on Broadway from the right?

Whether Elm Street was a main thoroughfare depends upon the construction of §6310-32, GC, in view of the proviso contained therein requiring the erection on Broadway of legible and appropriate signs at or near the point of intersection. It being conceded that no such legible and appropriate signs were at any time erected on Broadway, and no such signs being on Broadway at the time of the collision, was Elm Street a main thoroughfare of the city?

Unless the local authorities have properly designated Elm Street as a main thoroughfare, then by virtue of the provisions of §6310-28a, GC, the automobile driven by appellee had the right of way because approaching from the right. But §6310-28a, GC, gives to the vehicle approaching from the right the right of way "excepting as otherwise hereinafter provided"; hence, the necessity of determining whether Elm Street has been properly designated as a main thoroughfare.

What, then, is the effect of the proviso contained in §6310-32, GC? We cite Lewis' Sutherland Statutory Construction, Vol. 2, p. 670, §351 (222), from which we quote:

"It has not been an unfrequent mode of legislation to frame an action with general language in the enacting clause, and to restrict its operation by a proviso. * * * Provisos and exceptions are similar; intended to restrain the enacting clause; to except something which would otherwise be within it, or in some manner to modify it. A proviso is somehing engrafted upon a preceding enactment, and is legitimately used for the purpose of taking special cases out of a general class or to guard against misinterpretation. The general intent will be controlled by the particular intent subsequently expressed. Where a statute forbids the doing of an act except upon a condition precedent, as obtaining a license, and it is impossible to perform the condition, as if the act provides that no license shall be granted, the condition is valid and the prohibition absolute. A proviso is so identified with the text of a statute which it qualifies that if such enacting part is repealed by a subsequent statute repugnant to it, the proviso will fall also. The effect of an exception which is a part of the enacting clause and is of general application is simply to resrict it as to the matter excepted. It operates for this purpose co-extensively with the matter which precedes. Hence, in actions based on the statute the pleadings must negative the exception. An exception is strictly construed. * * *"

Keeping in mind that the purpose of designating certain streets as main thoroughfares is primarily, if not solely, to establish the right of way, it seems clear that the legislative intent, as expressed in the proviso contained in §6310-32, GC, required the city to do two things in order to create Elm Street as a main thoroughfare of the city; first, enact an ordinance or resolution designating Elm Street as a main thoroughfare and providing that vehicles operating thereon shall have the right of way over vehicles operating on intersecting streets which have not been designated main thoroughfares; and second, erect legible and appropriate ("stop") signs along the streets intersecting such main thoroughfares.

In an able opinion rendered by Honorable C. C. Crabbe, Attorney General of the state of Ohio, October 22, 1925, being Opinion No. 2890. the Attorney General held that under §§6310-30 and 6310-32, GC, it is mandatory that local authorities, in establishing main thoroughfares, shall erect appropriate signs as in the proviso contained in §6310-32, GC. In the opinion it is stated:

"This section (§6310-32 GC) authorizes the local authorities to designate by ordinance or resolution additional main thoroughfares. The latter part of said section provides that appropriate signs shall be erected. * * * The latter part of §6310-32 GC is a proviso; and the general rule of construction is that a proviso attaches only

to the part of the section immediately preceding such proviso. Under this rule, the provision for erecting signs will apply only to the main thoroughfares established by local authority. The evident purpose in requiring such signs is to advise persons using the highways and roads that highways which are not by statute made main thoroughfares are so designated by ordinance or resolution. * * * The proviso in the latter part of §6310-32 GC is a limitation upon the rights of local authority to designate additional main thoroughfares. As this is a limitation, the same must be read with the first part of such section and would be mandatory in all cases in which local authorities designate additional main thoroughfares. * * * With this view of the legislation, it would follow that in establishing main thoroughfares by local authorities, a condition precedent thereto is the erection of appropriate signs. * * * This conclusion is borne out when consideration is given to the fact that the section is a part of an act designated to protect the property and person of the traveling public. * * *"

We find and hold that under the evidence in the case at bar, Elm Street was not a main thoroughfare of the city of Youngstown at the time of the collision in question, by reason of the failure of the city to comply with the proviso contained in §6310-32, GC, which required the erection of legible and appropriate signs on Broadway.

The uncontroverted evidence in the record is that "stop" signs were erected on Elm Street, north and south of its intersection with Broadway. There is no evidence in the record showing by whom these "stop" signs were erected on Elm Street, but under the law the city council has control of the streets of the city, and in the absence of any evidence to the contrary it must be presumed that in pursuance of the control vested in the council over the streets of the city, the stop signs in question were legally erected.

The charge requested in writing before argument by counsel for appellant seeks to have the court instruct the jury that the "stop" signs located on Elm Street are not legally designated "stop" signs. Since the appellant sought to avail himself of immunity of complying with the "stop" sign erected at the intersection of Elm Street with Broadway, it was incumbent upon him to offer some proof to counteract, or at least counterbalance, the presumption that the "stop" signs at the intersection were legally erected and not having offered any evidence on this subject, it follows that the request to charge was properly refused by the trial court. There being no other error claimed to have occurred at the trial prejudicial to the rights of the appellant, it follows that the judgment of the Common Pleas Court must be, and the same is, affirmed.

Judgment affirmed.

ROBERTS, PJ, and CARTER, J, noncur.