HAFER, ADMR., APPELLEE, *v.* THE ALEX WILSON CO., APPELLANT.

(No. 192—Decided December 30, 1941.)

*Mr. Robert W. Bagby* and *Mr. W. G. Kenton,* for appellee.

*Mr. O. E. Young* and *Mr. John W. Brink,* for appellant.

METCALF, J.   This case is in this court on appeal on questions of law from the Court of Common Pleas of Brown county, the assignment of error relating only to the refusal of the trial court to sustain a motion for

judgment *non obstante veredicto,* filed by the defendant, appellant herein, after the verdict was returned and before judgment was entered.

Briefly the record discloses that plaintiff's decedent, Harrison Hafer, on the 15th day of February 1940, at about four o'clock in the afternoon was walking easterly on U. S. route No. 52 in the incorporated village of Aberdeen, Brown county, and traveling thereon on his, decedent's, left or northerly side facing oncoming traffic; that the highway consisted of concrete slab 20 feet in width; that defendant's truck was traveling westerly at such time and place; and that as a result of an injury sustained by being struck by the truck decedent died. Plaintiff, appellee herein, brought suit against defendant for the sum of $15,000. The issue was tried to a jury and a verdict returned in the sum of $1,500 and costs. Defendant filed a motion under authority of Section 11601, General Code, for judgment notwithstanding the verdict, which motion was overruled and judgment was entered on the verdict.

Plaintiff called as witnesses three parties who at the time and place in question were walking in the same direction as decedent and had only a short time prior to the accident passed decedent and were at the time of the impact somewhere between 50 and 100 feet easterly from the decedent and on the same side of the road. While they testified they saw the approaching truck and two of them stepped off the concrete slab to permit the truck to pass, one of them being able to continue on the concrete slab, yet their testimony is to the effect that they did not see the truck or the decedent at the time of the impact. When their attention was called to the accident by the noise the decedent had already been struck, the truck was somewhat crossways of the highway and had been stopped or was

in the process of stopping. The truck traveled but a very short distance after the impact and did not run over the decedent. The decedent was still ahead of the truck so as to obscure his view. from these witnesses. None of the witnesses heard any signal sounded by the truck driver. These witnesses had the same view of the approaching truck as was provided the decedent and they saw it coming.

The fourth witness testified as to the speed of the truck farther up the road but did not see the accident and came to the scene thereof when they were in the act of taking the decedent to the hospital. The fifth witness called by plaintiff was used for the purpose of identifying certain photographs that he had taken of the scene of the accident subsequent thereto. These exhibits do not in any way disclose the position of either the truck or the decedent at the time of the accident.

The first four witnesses placed the speed of the defendant's truck all the way from 25 to 45 miles per hour.

The record discloses that after plaintiff had called these witnesses and after certain exhibits had been introduced, plaintiff by his counsel offered in evidence a certain affidavit which was marked plaintiff's exhibit E and made a part of the record. Thereupon counsel for plaintiff read to the jury plaintiff's exhibit E and after reading the same plaintiff rested. This affidavit was made and executed by one of counsel for the defendant, having been sworn to on the 28th day of March 1941, and was made for the purpose of supporting a request for a continuance of.the trial of the case which was to take place on April 3, 1941.

The affidavit purports to show that the driver of defendant's truck, one Raymond B. Roberts, was then in

military training and stationed somewhere in the south, his exact whereabouts being unknown. The affiant further said that he is informed and believes that if Raymond B. Roberts were present at the trial of this cause he would testify that:

"On Thursday morning, February 15, 1940, he left Charleston, West Virginia, about 7:30 o'clock a. m. driving a 1940 model Ford truck owned by the defendant, and headed for Cincinnati, Ohio; that said truck was carrying some egg cases and other articles; that no one was riding in the truck with him; that he started out on U. S. Route No. 52 and stopped at Ironton, Ohio; then started on U. S. Route No. 52 for Cincinnati, Ohio; that he reached Aberdeen, Ohio, about 4:00 o'clock or 4:30 o'clock p. m. in the afternoon and was going west on U. S. Route No. 52. The highway around Aberdeen was spotted with some ice but the travel portion of the highway was clear; that after he proceeded just a little west of the center of the town going about twenty miles per hour he saw three men walking together east on Route No. 52 on the north side of the road; that they were walking along the concrete; about twelve feet behind these men another man was walking by himself on the same side of the highway in the same direction; that he afterwards found that this man was Harrison Hafer. That just before he reached these three men he blew his horn, and these three men looked up and saw him coming; that he continued to proceed west about twenty miles per hour and when he was about twenty feet from the man walking by him, (Harrison Hafer), he suddenly turned and walked right out into the center of the highway. When he got into the street he then seemed to see the driver and the truck he was driving and started to take a step back; that he cut his truck to the left to avoid hitting Mr. Hafer, who then stepped forward

again, and that the said Raymond B. Roberts immediately applied his brakes but that it was impossible to avoid hitting him with the front grill; * * *.''

The rest of the affidavit pertains to the acts of the driver following the accident and has no importance here other than his actions negative any wanton and wilful negligence or conduct.

The affidavit is marked filed by the clerk of the Court of Common Pleas March 29, 1941, and on the same day the record discloses an entry of the court that it appearing to the court that plaintiff and his counsel admit in open court that if present the witness Raymond B. Roberts would testify in substance as set forth in the affidavit, the application for continuance was withdrawn and the assignment allowed to stand. The effect of this affidavit under the circumstances was the same as a deposition on the part of Roberts. *United States Life Ins. Co.* v. *Wright,* 33 Ohio St., 533. By its introduction in evidence the plaintiff made this witness his own. The testimony therein contained raises a clear presumption or inference of contributory negligence on the part of plaintiff's decedent. It then became the duty of the plaintiff to rebut or dispel that presumption or inference by that degree of proof sufficient to equal or counterbalance the evidence tending to show the contributory negligence on the part of the decedent. The record discloses that he failed to do this. The defendant filed a motion for a directed verdict at the end of plaintiff's testimony.

Evidence having been introduced to the effect that defendant's truck was being operated at a high and dangerous rate of speed, and that there was no signal or warning of any kind given, the motion for a directed verdict admitted the negligence of the defendant in that respect and it was a matter for the court's determination whether the plaintiff's evidence raised a

reasonable presumption of contributory negligence on the part of the plaintiff's decedent directly contributing to his injury and death, and if so whether any portion of such evidence, given the most favorable interpretation of which it was reasonably susceptible in support of the theory of due care on the part of plaintiff's decedent, tended to dispel that presumption. If it did it made a question of fact for the determination of the jury; if not it made a question of law for the court.

The plaintiff at that time had introduced and read the affidavit referred to. According to this evidence, introduced by plaintiff, the decedent, when the truck was within about 20 feet of him, suddenly turned and walked right out into the center of the highway. When he got into the street or highway he then seemed to see the driver and the truck he was driving and started to take a step back; the driver having cut his truck to the left to avoid hitting the decedent, the decedent then stepped forward again and it was impossible according to the state of the record to avoid hitting him. The plaintiff's evidence being such that it raised a presumption of negligence upon the part of the decedent contributing directly to his injury and death, the burden was cast upon plaintiff to dispel that inference. He offered no such evidence. At the close of plaintiff's evidence the question of contributory negligence had not only been raised by plaintiff's own evidence but had ceased to be a question of fact for the determination of a jury and had become an ascertained fact for the application of the law thereto by the court. 4 Ohio Jurisprudence, 635, Section 41; *Galiardi* v. *Bowman,* 20 Ohio Law Abs., 452; *Spusta* v. *Bernow,* 7 Ohio Law Abs., 90; *Roland* v. *Newman,* 7 Ohio Law Abs., 100.

The Supreme Court in the case of *Baltimore & Ohio Rd. Co. v. McClellan, Admx.*, 69 Ohio St., 142, 68 N. E., 816, laid down the law in the second paragraph of the syllabus as follows:

"Where the testimony of the plaintiff raises a clear presumption of negligence on his part which directly contributed to his injury, and no testimony is offered by him tending to rebut that presumption, it is the duty of the trial court to sustain a motion by the defendant made at the conclusion of plaintiff's evidence, to direct a verdict, and a refusal to sustain such motion is error."

Again the Supreme Court in the case of *Norris, Exrx., v. Jones, Recr.*, 110 Ohio St., 598, 144 N. E., 274, said on page 603:

"However, it is the rule in Ohio that when plaintiff's evidence raises a clear presumption of contributory negligence which is not rebutted by any evidence, it is the duty of the court to take the case from the jury."

In discussing this same question 13 Ohio Jurisprudence, 648, Section 312, concludes:

"* * * it is reversible error to overrule a motion to direct a verdict for the defendant, in a case where the facts give rise to a clear legal presumption under which he would be relieved of liability, and there is no evidence inconsistent with this presumption. This rule applies in actions for wrongful death based upon negligence of the defendant, where the plaintiff fails to offer evidence to rebut a presumption, raised by his own testimony, of negligence, proximately contributing to the injury and death, on the part of the person killed, * * *."

The motion for a directed verdict should have been sustained.

The testimony offered by the defendant is corrobo-

rative of the affidavit as to the contributory negligence of decedent. Defendant's motion for a directed verdict was renewed at the end of all the testimony and was, in our opinion, erroneously overruled and the case allowed to go to the jury. The record discloses that reasonable minds could have reached only one conclusion upon the question of fact presented, that the contributory negligence of plaintiff's decedent directly contributed to the proximate cause of his injury and death, and thereby it became a question of law and not of fact.

It is, therefore, our conclusion that the trial court erred in overruling defendant's motion both at the end of plaintiff's testimony and at the end of all the testimony and that defendant's motion for judgment notwithstanding the verdict should have been sustained.

The conclusion reached in this case makes it unnecessary to discuss the phase of pecuniary damages other than to say there is no evidence in the record sustaining any pecuniary damage or money loss to the next of kin named in the amended petition.

It therefore follows that the judgment of the Common Pleas Court is reversed and judgment is entered for the defendant at plaintiff's cost.

*Judgment reversed.*

Gillen, P. J., and McCurdy, J., concur.