CONNORS ET AL., APPELLEES, *v.* DOBBS, APPELLANT.

(No. 3703—Decided February 14, 1945.)

*Messrs. Slabaugh, Seiberling, Guinther & Pflueger,* for appellees.

*Messrs. Buckingham, Doolittle & Burroughs,* for appellant.

STEVENS, P. J. On May 4, 1941, at about 10 a. m., James H. Connors was driving his Packard automobile

in a northerly direction in North Hawkins avenue in the city of Akron, at a lawful rate of speed. At the same time, Ernest Dobbs was driving a Buick automobile in a westerly direction on Bryden drive, which street intersects North Hawkins avenue at a right angle. Dobbs was also proceeding at a lawful rate of speed.

A collision occurred between said automobiles, in which Connors received personal injuries; and his car was damaged.

Connors carried collision insurance upon his auto with National Retailers Mutual Insurance Company, which company paid Connors for the damage to his auto.

Connors and the insurance company then sued Dobbs —plaintiff Connors seeking to recover for his personal injuries, and plaintiff insurance company seeking reimbursement for the amount paid to Connors because of collision damage to his automobile.

The case was submitted to the trial court, without the intervention of a jury, and a judgment was entered in favor of both plaintiffs. This appeal on questions of law followed.

North Hawkins avenue, at the point of this collision, is paved with concrete slab to a width of about 20 feet.

Bryden drive is paved with tar-bound macadam to a width of about 24 feet.

By ordinance of the city of Akron, passed in 1936, "Hawkins avenue from Wiltshire road to Market street" was designated as a main thoroughfare. Within the limits so established is the Bryden drive intersection with Hawkins avenue.

Section 6310-32, General Code, confers upon local authorities "the right to designate by ordinance or resolution additional main thoroughfares and to designate what vehicles shall have the right of way at in-

tersections of main thoroughfares; provided, however, that legible and appropriate signs be erected along the roads and highways intersecting such main thoroughfares * * *."

The above section was in effect at the time of the collision under consideration.

It is apparent that, under the pleadings, plaintiffs' right to recover from defendant must be predicated upon the basis of negligence of defendant which proximately caused plaintiffs' damage, to which the plaintiff Connors did not negligently contribute.

A determination of those questions of negligence involves an examination of the rights of the parties as they approached and entered the intersection of Hawkins avenue and Bryden drive.

Concededly, plaintiff Connors was traveling upon a street which had been, by appropriate action of the city authorities, designated as a main thoroughfare. If legible and appropriate signs were erected upon Bryden drive after such designation, then the steps necessary to constitute the street a main thoroughfare had been taken.

There is conflicting evidence concerning the erection of stop signs upon Bryden drive, subsequent to its designation as a main thoroughfare, but we are of the opinion that the evidence justifies the finding by the trial court that the evidence preponderates in favor of appropriate signs having been erected after the passage of the ordinance.

There is also involved the question of the knowledge possessed by the two drivers. Connors knew that Hawkins avenue was a main thoroughfare and proceeded upon the assumption that he had a preferential right thereon, over cars approaching upon intersecting streets. Dobbs knew that Hawkins avenue south of Market street was a main thoroughfare, but

claims he did not know such to be the case north of Market street.

It may be taken as proved that there was, at the time of this occurrence, no stop sign on Bryden drive east of its intersection with Hawkins avenue.

What were the rights of the respective parties under these circumstances?

There is a case which holds that the failure of the city to install stop signs on intersecting streets after the designation of a street by ordinance as a main thoroughfare, precludes the street so designated from becoming a main thoroughfare, with the attendant preferential right of way, until stop signs have been erected on the intersecting streets, as required by Section 6310-32, General Code. See *Bartlett* v. *McDonald*, 59 Ohio App., 85; 17 N. E. (2d), 284.

There is not, however, so far as we have been able to ascertain, any Ohio case holding that a street so designated as a main thoroughfare, where stop signs on intersecting streets have been erected after the designation of the main thoroughfare, loses its character as a main thoroughfare merely because said stop signs on the intersecting streets may have become illegible, or have been destroyed or otherwise removed.

It must be remembered that the place where the collision under consideration occurred was within the intersection of two improved streets.

Under the pronouncement of the Supreme Court of Ohio in *Elms* v. *Flick*, 100 Ohio St., 186 (syllabus 1), 126 N. E., 66, "the term 'the road' as used in Section 6310, General Code, should be construed to mean the improved portion of the road, where it is disclosed that it is of ample width to permit the passing of automobiles thereon with safety."

And inasmuch as this occurrence involves an intersection of two improved streets, it may be well to de-

fine what we understand the term "intersection" to mean.

Where two improved streets or highways intersect, the term "intersection" means the improved area embraced within the lateral boundary lines of the two streets or highways, as improved, extended to their points of juncture with the lateral boundary lines of the intersecting street or highway, as improved.

Plaintiff Connors, possessed of knowledge that Hawkins avenue was a main thoroughfare, had a right to rely on that knowledge and upon his preferential right to proceed uninterruptedly across its intersection with Bryden drive, until such time as, in the exercise of ordinary care, he became aware of defendant's intention not to stop before entering the intersection. Then he was required to exercise ordinary care not to injure Dobbs.

Dobbs, under these circumstances, was by law required to stop before entering the intersection, and his failure so to do was negligence.

A proper sign having been erected, Dobbs was charged with knowledge of the designation of Hawkins avenue by ordinance as a main thoroughfare, even in the then absence of a stop sign; and the evidence would warrant the inference that he had actual knowledge that Hawkins avenue, at the place of collision, was so designated, and that, even though he was approaching from plaintiff's right, he was required to come to a full stop before entering said intersection.

The trial court was entirely justified in denying defendant's motions for a directed verdict made at the conclusion of plaintiff's evidence, and at the conclusion of all of the evidence, in the absence of a showing of contributory negligence on the part of the plaintiff, which we find not to have been shown.

However, entirely independent of a preferential stat-

utory right of way in either of these parties, and assuming the rights of the parties here to be only such as accrued to them under the common law without any preferential right in either, it seems to the members of this court that the place of collision within the intersection most strongly indicates that the defendant entered the intersection without exercising any care to avoid colliding with the car of the plaintiff.

Plaintiff had driven more than half way across the 24-foot intersection of Bryden drive, keeping at all times on the right-hand side of Hawkins avenue, which was a 20-foot street. Half of the width of Hawkins avenue is 10 feet; more than half of said 10 feet was occupied by plaintiff's automobile. It thus becomes apparent that, for the defendant to run into the right side of plaintiff's automobile, defendant could have proceeded not more than 4 or $4\frac{1}{2}$ feet into the intersection to the point of collision—that point being in the northeast quadrant of the intersection.

Moreover, defendant admits that he looked neither to the right nor the left after leaving a point 25 feet east of Hawkins avenue, at which point his vision was obscured by shrubbery.

We are of the opinion that the judgment entered by the trial court was warranted by the evidence contained in this record. In any event, we are unable to conclude that the finding and judgment are manifestly against the weight of the evidence, as claimed by the appellant. Nor are we able to find that plaintiff Connors was guilty of negligence which proximately contributed to cause his own injuries.

In the face of these conclusions, it is our opinion that the judgment of the lower court should be, and it is hereby, affirmed.

*Judgment affirmed.*

WASHBURN and DOYLE, JJ., concur.