FLANNERY, APPELLEE, *v.* TESSAROMATIS ET AL., D. B. A. PHOENIX PIE CO., APPELLANTS.

(No. 558—Decided March 23, 1949.)

*Messrs. Bannon, Bannon & Howland,* for appellee.
*Mr. Cyrus P. Kahl,* for appellants.

METCALF, J. This is an appeal on questions of law from a judgment of the Municipal Court of Portsmouth in favor of the plaintiff, Harold Flannery, against the defendants, George and Harry Tessaromatis, doing business as Phoenix Pie Company, in an action for damages growing out of a collision between the automobiles driven by plaintiff and a third party.

At about 7:00 o'clock p. m., on September 12, 1947, plaintiff, together with two passengers, was traveling easterly on Robinson avenue, which avenue runs in a general easterly and westerly direction, and approaching its intersection with Offnere street, which street runs in a general northerly and southerly direction, in the city of Portsmouth. While no ordinance of the city of Portsmouth is pleaded, it is alleged and admitted and the evidence establishes that Offnere street is a "through highway" and that Robinson avenue at its intersection with Offnere street is an "intersecting stop street," and that at the time in question there was a proper stop sign, erected as provided by law, on the southwest corner of this intersection advising vehicular traffic on Robinson avenue approaching from the west of its obligation to stop before entering the intersection.

Plaintiff, while traveling at a lawful rate of speed, approached and entered Offnere street from Robinson avenue without stopping or slackening his speed, and while in the intersection was struck by an automobile owned and being driven by a third party in a southerly direction on Offnere street. The record indicates, and the trial court so found, that the car being driven by the third party was being operated in a lawful manner.

Plaintiff admits that as he entered this intersection he looked only to his right; that he did not look to his left, the direction from which the third party was ap-

proaching; and that he did not see the third party until a "split-second" before plaintiff's car was struck on its left side, causing the damages complained of.

Plaintiff, at the time of the accident, was a resident of Kentucky. He was not familiar with Robinson avenue or Offnere street, did not know that the former was a stop street or the latter a through highway, and, therefore, did not stop, believing that it was his duty to look only to the right as he entered the intersection. After the collision plaintiff did observe the stop sign but found parked along the southerly curb of Robinson avenue, headed east, a tractor-trailer truck of the defendants with its bumper approximately three feet from the stop sign, which truck plaintiff claims obscured his view of the sign and that the negligence of the defendants in so parking or permitting the truck to be parked was the direct and proximate cause of the plaintiff's damage.

The statutory provision on which this cause of action is predicated is Section 6307-66 (a) 7, General Code, which provides in substance that no person shall park a vehicle within thirty feet upon the approach to any stop sign or traffic-control signal located at the side of a roadway.

It should be added in passing that plaintiff made a party defendant the Gil Galyean Company, a corporation, it being the owner of the garage whose employee had parked the truck on delivering it to the defendant Phoenix Pie Company after it had been serviced. This corporate defendant was dismissed by the trial court during the trial, and, no cross-appeal having been taken from such dismissal, no further consideration need be given this defendant except in disposing of one of the assignments of error hereinafter set forth.

The answer of the defendants (Phoenix Pie Com-

pany) is first a general denial and, second, that if plaintiff was so damaged "and that if it should be found that these answering defendants were in any respect negligent which, however, they deny, then plaintiff's own negligence and his failure to use ordinary care to observe and avoid the other vehicle, at the time and place mentioned, directly and proximately contributed to whatever injuries plaintiff may have sustained."

There are four assignments of error, the first, second and fourth being, in that order, error claimed in the overruling of the demurrer, the overruling of the motion to require an election as against which of the defendants plaintiff would proceed, and in the assessing of damages. The second and fourth assignments are not well taken for the reason that the court did dismiss one of the defendants, the corporation, as hereinabove mentioned, and the damages were established in an acceptable and proper manner. A discussion of the first assignment is not necessary in view of the position this court takes of the questions raised under the third assignment which is that "the trial court erred in finding the defendant * * * liable under the evidence submitted."

Conceding for the purposes of this opinion that the defendants (Phoenix Pie Company) were negligent in permitting the truck to be so parked, that the parking thereof obscured the stop sign, and that this negligence was a direct and proximate cause of plaintiff's damage, the sole question to be answered in this appeal is whether the plaintiff was guilty of negligence directly contributing to the proximate cause of the damages sustained?

It is the theory of plaintiff in this appeal, and was in the trial court, that when a lawfully erected stop sign is obscured or not visible to one who has no per-

sonal knowledge of its existence, the intersection guarded by such stop sign automatically becomes an intersection controlled by Section 6307-40, General Code, which section reads:

"*Excepting where otherwise provided* the operator of a vehicle * * * shall yield the right of way at an intersection to a vehicle * * * approaching from the right." (Emphasis supplied.)

It is well to keep in mind some other provisions of the statute covering the situation at the intersection involved. Section 6307-2, General Code, defines a "through highway" to be "every highway or portion thereof at the entrance to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same."

In the same section "right of way" is defined as "the right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it * * * is moving in preference to another vehicle * * * approaching from a different direction into its * * * path."

Under subdivision (a) 6 of Section 6307-7, General Code, the city of Portsmouth had the right to designate Offnere street as a "through highway" and require all vehicles to stop before entering or crossing the same, provided that under subdivision (b) of this section "signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected as may be most appropriate." We must assume that this street was so designated and the stop sign lawfully installed, even though the ordinance creating the same was not pleaded, for the reason that without such designation and without such lawful installation there could be no cause of action against the defendants (Phoenix Pie Company) so far as this case is concerned.

The person who was driving southerly on Offnere street, the through highway, had the right to proceed uninterruptedly in a lawful manner across the intersection, and surely it was the duty of the plaintiff to permit him to so proceed. There can be no argument that as between plaintiff and the third person, the latter had the right of way. This being true, will the plaintiff be allowed to say that he did not know the legal implications applicable to vehicular traffic at this intersection and that, therefore, he was justified in entering the intersection without stopping and looking to his left.

On this point, plaintiff testified on direct examination as follows:

"Q. What were the weather conditions on this day? A. Well, it was dark and raining.

"Q. How far did you go on Robinson avenue? A. To Offnere.

"Q. In which direction were you proceeding on Robinson avenue? A. East.

"Q. What occurred when you arrived at the intersection of Robinson avenue and Offnere street? A. I was hit in the side by another automobile.

"Q. In what direction was the other automobile proceeding? A. South on Offnere. * * *

"Q. Where, with reference to the intersection, did the accident occur? A. Approximately at the center.

"Q. Did you observe any stop sign on the southwest corner of Robinson avenue at any time after the accident? A. Yes.

"Q. Did you observe it before the accident? A. I did not.

"Q. Did you at any time observe a truck of Phoenix Pie Company? A. I did."

On cross-examination plaintiff testified:

"Q. When did you first observe this car that was

coming down the hill that ran into you that night? A. Well, just a split second before it hit me.

"Q. Did the car have any headlights? A. Yes.

"Q. Was there any traffic going either way at that time? A. No, I don't believe so.

"Q. Was there any traffic on Offnere street going either way at the time? A. No, I don't think so.

"Q. As you approached the intersection of Robinson avenue and Offnere street, did you look to see whether there was any car coming from either direction? A. Yes, I was watching on the right.

"Q. But you didn't watch on the left? A. Well, after it was too late I looked around.

"Q. As you entered the intersection? A. Yes, I was watching to my right first. * * *

"Q. Do you want us to understand that you didn't see this car coming until it hit you? A. Well, I saw him just before the impact."

Plaintiff was the last witness on behalf of himself and rested his case at the conclusion of his testimony. Counsel for defendants moved, among other things, for judgment "on the further grounds that the evidence of plaintiff shows that the plaintiff was guilty of contributory negligence in not entering the intersection in a cautious manner and observing the traffic coming from either direction on Offnere street."

In passing on this phase of the motion for judgment on the ground of contributory negligence the trial court said that "any person entering an intersection, where no control is present, then falls back upon the state law which gives to the person on the right the right of way." The court said further that "the law is definite, that he who has entered into the intersection has the right to proceed in a lawful manner, and he who is entering into an intersection then becomes bound to proceed under ordinary care." The trial

court then reasoned from the physical evidence that by reason of the collision having occurred in the center of the intersection (although the record indicates clearly that each car was in its own lane of traffic), ''it would seem to the court that the car of the plaintiff would have been entering the intersection * * * ahead of the car proceeding south on Offnere.'' The trial court concluded that, although plaintiff did not stop or look to the left, under the state law he had the right of way and thereupon overruled the motion for judgment on the ground of contributory negligence.

As we understand this ruling, the trial court held that by reason of the stop sign not having been observed by plaintiff, due to the obscuring of it by the tractor-trailer of defendants, the intersection at the place of the collision automatically, so far as plaintiff was concerned, became an ordinary highway intersection controlled by Section 6307-40, General Code, without any other preference to the traveling public over either of these streets, and that, therefore, the person on the right had the right of way regardless of the other provisions of the General Code and the ordinance of the city of Portsmouth, and, further, that one approaching the intersection first has the right of way over the other under such circumstances regardless of the Code or ordinance.

It seems to this court that one of the cardinal purposes of the Uniform Traffic Act is to avoid the confusion and danger inherent in races to get to intersections first, and that such rule has been abrogated in Ohio, at least, since the decision of *Morris* v. *Bloomgren, infra.* It seems further to this court that the trial court ignored the statutory provision and the ordinance creating Offnere street a through highway and Robinson avenue an intersecting stop street by

treating the fact that the stop sign was temporarily obscured as tantamount to never having been lawfully erected.

While it is always a dangerous practice to attempt to fix the location and situs of two automobiles prior to a collision from the physical condition and location thereafter, yet this court does not hesitate to draw a conclusion entirely different from that of the trial court as to which of the cars entered the intersection first, taking the trial court's finding that they both were traveling at a lawful rate of speed and in their own lane of traffic. The car driven by the third party had not only entered the intersection but had traversed at least one-half of the distance across Robinson avenue when it struck plaintiff's car near the front left side, which indicates clearly that plaintiff had only reached the center of one-half of the Offnere street lane of traffic. There are no measurements in the record as to the width of these two streets or the width of the intersection at the place of the collision, but certainly this observation should be clear. However, the law applicable to the right of way in the instant case is not Section 6307-40, General Code, giving the right of way to the vehicle approaching from the right. That section excepts intersections where the right of way has otherwise been provided. The city of Portsmouth, under subdivision (a) 6 of Section 6307-7, General Code, had otherwise provided by making Offnere street a through highway and Robinson avenue an intersecting stop street.

In *Peltier* v. *Smith,* 78 Ohio App., 171, 66 N. E. (2d), 117, it is held in the fourth and fifth paragraphs of the syllabus:

"Section 6307-40, General Code, which provides that the vehicle approaching an intersection from the right has the right of way *does not apply to a situation*

*where the collision occurs at the intersection of a through highway and an intersecting stop street.*

"The right of a motorist to use the through highway uninterruptedly is an absolute right qualified only by his duty to use it in a lawful manner." (Emphasis supplied.)

Under such circumstances can plaintiff be allowed to say that, where on a dark and rainy night he traversed a street in a strange city without slackening his speed or stopping or looking to his left, and in total disregard for his own and other's safety drove directly across the path of a car lawfully traveling on a main arterial street, which approaching car could have been observed had plaintiff looked, he acted as an ordinary prudent and careful person would have done under the same or similar circumstances?

It must be kept in mind that the record is void of any wrongdoing on the part of the approaching car on Offnere street. Both the plaintiff and the driver of the other car are presumed to know the law applying to this intersection.

The court in *Peltier* v. *Smith, supra,* a case much in point with the instant case so far as the right of way of the drivers of the two automobiles involved are concerned, said at page 173:

"The defendant [in the instant case the third party] was traveling northwardly on College street, and the plaintiff was traveling westwardly on Young street. The defendant, driving on a through highway, had the right to proceed uninterruptedly in a lawful manner across the intersection and it was the duty of the plaintiff to permit the defendant to proceed across this intersection. In other words, it was the duty of the plaintiff to yield the right of way to the defendant and not to drive into the intersection so as to deprive the defendant of his right to proceed uninterruptedly

in a lawful manner in the direction in which he was moving.

"*The drivers of these two automobiles were presumed to know the law and their rights and obligations under the law. The defendant, driving on the through highway, had a right to assume that the plaintiff, as he approached the through highway from an intersecting street, would obey the law by stopping and yielding the right of way to the defendant. Morris v. Bloomgren,* 127 Ohio St., 147, 187 N. E., 2, 89 A. L. R., 831; *Warnock* v. *Youngstown Bag & Burlap Co.,* 14 Ohio Law Abs., 85." (Emphasis supplied.)

The Supreme Court of the state of Washington, under a statute relative to stop signs and arterial streets very similar to ours, in a case in which it was contended that the appellants did not know that the street they were approaching was an arterial street, and that, by reason of an obstruction to their view caused by an automobile and truck parked "along side and near to the arterial sign," they could not see it, and drove into the intersection believing they were entitled to the right of way over any traffic approaching from their left, held in *Metzger* v. *Moran* (1939), 1 Wash. (2d), 657, 96 P. (2), 580, that "when the proper authority has established an arterial highway and notified its existence to the public by the erection of a stop sign, anyone approaching the arterial from an intersecting street is presumed to know that it is such and required to obey the statutory injunction to stop;" that a motorist involved in a collision at an intersection with an automobile approaching from the left on an arterial highway *can not be heard to say that he did not know of the existence of the stop sign or that he could not see it*; and that a motorist driving on an arterial street has the right to assume that the law will be obeyed and that the motorist approaching the

intersection from the cross-street will stop before crossing.

In *Franz* v. *Levine,* 72 Ohio App., 280, 51 N. E. (2d), 219, it is held, as disclosed by the syllabus:

"A motorist is not excused from disregarding a stop sign at an intersection by the fact that a 'defense barrel' had been placed so as to obstruct his view of such sign as he approached."

In the *Franz* case the trial judge found that defendant had failed to stop at a stop sign protecting the intersection where the accident occurred, and that such sign was not visible to defendant at the time because some third person had placed a defense barrel in front of it. The Court of Appeals of the First Appellate District held that the finding supported the judgment for plaintiff, the contention that because defendant's vision of the sign was blocked without his fault and he therefore could not be held negligent in failing to observe it, being without merit.

In that case, as in the instant case, counsel for defendant (the plaintiff here) cited *Blessing* v. *Welding,* 226 Iowa, 1178, 286 N. W., 436. In the *Blessing case* the action was not against the one who had failed to obey the stop sign, but the suit was between the wife of the driver who was traveling the arterial street and the person who had obscured the sign. As pointed out in the *Franz case,* the Supreme Court of Iowa held that the parking of the automobile contrary to law so as to hide the stop sign was the proximate cause of the collision between the automobiles notwithstanding the intervening act of the traveler on the stop street in disregarding the right of the plaintiff who was traveling on an arterial highway. However, the Iowa court did not say that the one who disregarded the right of the traveler on the arterial highway was not negligent, its decision

being that the person who unlawfully obstructed the view of the stop sign was negligent and that such negligence contributed to the proximate cause of the collision.

A reading of the *Blessing case* reveals the Iowa court emphasized that, even if the party who disregarded the stop sign by reason of it being obscured is negligent, such fact is of no avail if the one who obscured the sign, acting as an ordinary prudent person, could or should have anticipated that such or a similar intervening act would occur.

It is said in the opinion in *Jones* v. *McCullough*, 148 Kan., 561, at page 566, 83 P. (2d), 669:

"The defendant insists he was not obliged to stop, because there was no stop sign on the north side of the intersection, and a police ordinance provided that no provision of the *stop-sign* ordinance should be enforceable against an alleged violator, if at the time and place of the alleged violation, the sign was not in a proper position and sufficiently legible to be seen by an ordinarily observant person. Obviously, such a police ordinance, while it would be effective to relieve the violator from prosecution and fine, could not change the character or nature of streets and thoroughfares which were expressly designated by another ordinance as constituting principal streets and rights of ways."

In *Connors* v. *Dobbs,* 77 Ohio App., 247, 66 N. E. (2d), 546, the plaintiff was driving northerly in the city of Akron on North Hawkins avenue, an arterial street, and the defendant, Dobbs, was driving westerly on Bryden drive, an intersecting stop street. The stop sign on Bryden drive had apparently been removed or destroyed. Both drivers were proceeding at a lawful rate of speed and, not having observed any stop sign, Dobbs did not stop and a collision occurred at the in-

tersection. The court held in the first paragraph of the syllabus:

"A municipality may, by ordinance, designate a main thoroughfare, provided legible and appropriate signs are properly erected along the intersecting roads; *but after such compliance the main thoroughfare does not lose its status merely because a sign on an intersecting road becomes illegible or is destroyed.*" (Emphasis supplied.)

In the course of the opinion, at page 250, the court, after calling attention to the statutory requirement that the erection of stop signs is necessary to effectuate the designation of main thoroughfares by ordinance, stated:

"There is not, however, so far as we have been able to ascertain, any Ohio case holding that a street so designated as a main thoroughfare, where stop signs on intersecting streets have been erected after the designation of the main thoroughfare, loses its character as a main thoroughfare merely because said stop signs on the intersecting streets may have become illegible, or have been destroyed or otherwise removed."

See, also, subdivision (a) 6 and (b) of Section 6307-7, General Code.

At page 251 of the *Connors case*, the court, in observing that the plaintiff had the right to proceed uninterruptedly across this intersection in a lawful manner, commented:

"Dobbs, under these circumstances, was by law required to stop before entering the intersection, and his failure to do so was negligence.

"A proper sign having been erected, Dobbs was charged with knowledge of the designation of Hawkins avenue by ordinance as a main thoroughfare, even in the then absence of a stop sign * * *."

It being established by the great weight of author-

ity that Flannery did not have the right of way at the intersection of Robinson avenue and Offnere street, and that he was bound by law to know this, when he testified that he did not stop and did not look to his left and that he did not observe any traffic on Offnere street going either way, when in fact if he had looked he would have seen the car approaching and entering the intersection on the arterial street, his testimony at least raised a presumption of negligence upon his part contributing directly to the damages complained of, and the burden was cast upon him to dispel that presumption. He offered no such evidence, none of the testimony in any way going to that issue save the testimony of a passenger in the front seat, who testified in substance that he likewise did not look to the left.

At the close of plaintiff's evidence the question of contributory negligence had not only been raised by plaintiff's own testimony but had ceased to be a question of fact and had become an ascertained fact for the application of the law thereto by the court under the motion filed. 4 Ohio Jurisprudence, 635, Section 41; *Galiardi* v. *Bowmen,* 20 Ohio Law Abs., 452; *Spusta* v. *Bernow,* 7 Ohio Law Abs., 90; *Roland* v. *Newman,* 7 Ohio Law Abs., 100.

The Supreme Court, in the case of *Baltimore & Ohio Rd. Co.* v. *McClellan, Admx.,* 69 Ohio St., 142, 68 N. E., 816, laid down the law in the second paragraph of the syllabus as follows:

"Where the testimony of the plaintiff raises a clear presumption of negligence on his part which directly contributed to his injury, and no testimony is offered by him tending to rebut that presumption, it is the duty of the trial court to sustain a motion by the defendant made at the conclusion of plaintiff's evidence, to direct a verdict, and a refusal to sustain such motion is error."

Again the Supreme Court in the case of *Norris, Exrx.,* v. *Jones, Recr.,* 110 Ohio St., 598, 144 N. E., 274, said on page 603:

"* * * However, it is the rule in Ohio that when plaintiff's evidence raises a clear presumption of contributory negligence which is not rebutted by any evidence, it is the duty of the court to take the case from the jury."

In discussing this same question, 13 Ohio Jurisprudence, 648, Section 312, states:

"It is reversible error to overrule a motion to direct a verdict for the defendant, in a case where the facts give rise to a clear legal presumption under which he would be relieved of liability, and there is no evidence inconsistent with this presumption."

See, also, *Hafer, Admr.,* v. *Alex Wilson Co.,* 83 Ohio App., 5, 82 N. E. (2d), 123, decided by this court on December 30, 1941.

The motion for judgment on the ground of contributory negligence should have been allowed.

This not having been done, there is nothing in the testimony of the defense to in any way dispel or rebut the presumption of contributory negligence raised by the plaintiff, and the judgment at the conclusion of all the testimony should have been for the defendants.

There is a serious question in this case as to whether the illegal parking of the tractor-trailer by defendants, under all the circumstances, was negligence per se, and whether such act was in any way the proximate cause of the collision. We deem it unnecessary, however, to discuss this issue further than to observe that the case of *Szabo, a Minor,* v. *Tabor Ice Cream Co.,* 37 Ohio App., 42, 174 N. E., 18, relied upon by plaintiff to support the issue of proximate cause is not decisive.

In the *Szabo case* the defendant's truck was parked between a safety zone and curb in such a manner that

the driver of the truck in which plaintiff was riding when injured thought the truck was in motion when he first saw it, and that but for such parking the injuries would not have occurred because there would have been ample space for the Szabo truck to have passed. The court observed that if the defendant's truck had not been so parked, no injury would have been sustained by the plaintiff. It cannot be said under the circumstances in the instant case, as revealed by the testimony of the plaintiff, that the collision would not have occurred had it not been for defendants' truck illegally parked.

See, also, the third paragraph of the syllabus of *Peltier* v. *Smith, supra,* wherein it was held that the plaintiff was negligent under circumstances similar to the instant case in failing to yield the right of way to the party traveling on the arterial street, and that such negligence was the proximate cause of the collision.

However, it is the conclusion of this court that under all the surrounding circumstances disclosed by the record, plaintiff was guilty of negligence directly contributing to the proximate cause of the collision, and that this was established as a matter of law both at the conclusion of plaintiff's evidence and at the conclusion of the trial, which precludes a recovery.

The judgment must be reversed and, there being no conflict of testimony on the material issues in this case, the question being solely one of law, this court will enter the judgment that should have been entered by the trial court by dismissing plaintiff's petition and entering judgment for the defendants.

*Judgment reversed and final judgment for defendants.*

McCurdy, P. J., and Gillen, J., concur.