**CITY OF AKRON, Appellee,**

v.

**COOK, Appellant.**

[Cite as *Akron v. Cook* (1990), 67 Ohio App.3d 640.]

Court of Appeals of Ohio,
Summit County.

No. 14377.

Decided May 16, 1990.

1. Our opinion does not address the issue of appellants' standing before the board.  However, we note that the board in its decision to dismiss appellants' appeal, issued May 3, 1989, stated:

"It would appear that in the absence of any other factors, the present appeal would be a valid one in that it was based upon an action of the Director as defined in Section 3745.04 and one in which the present Appellants would have apparent standing to pursue the appeal.
\* \* \* "

*Renee W. Green,* Assistant Prosecuting Attorney, for appellee.

*Rebecca Hazlett–Cook,* for appellant.

QUILLIN, Judge.

The prime issue in this traffic violation case is whether the prosecution must present direct evidence to prove the lawful placement of a traffic control device when the issue is not raised in the trial court. For the reasons that follow, we hold that proof of the existence of a traffic control device permits an inference that it was lawfully placed.

On September 14, 1989, defendant-appellant, Mack D. Cook II, was driving west on East Market Street in Akron, Ohio. Cook proceeded to the intersection of Market Street and Main Street, and stopped his vehicle in the left-turn-only lane on Market Street. After allowing several other automobiles to continue eastward through the intersection, Cook made a left turn onto South Main Street. Akron police officer, William Biasella, then stopped Cook's vehicle and issued him a citation for making an illegal left turn, a violation of Akron City Code Section 70.20.

At trial, Biasella testified that at the time of Cook's citation the usual left-turn arrow on the Market Street traffic signal was not operating because of major street reconstruction. Biasella also testified that a "no left turn" sign was posted on a construction barrel in view of westbound Market Street traffic at the intersection. Another "no left turn" sign was posted next to the Market Street traffic signal hanging above the intersection. Cook, however, testified that the left-turn arrow was functioning and that he saw no signs prohibiting a left turn. He asserted he turned left as permitted by the left-turn arrow.

### Assignment of Error I

"The trial court erred in finding defendant-appellant guilty of disobeying the instructions of a traffic-control device placed in accordance with the provisions of the traffic code of the City of Akron."

Akron City Code Section 70.20(A) provides in part:

"(A) No pedestrian or driver of a vehicle shall disobey the instructions of any traffic-control device placed in accordance with the provisions of this traffic code * * *."

Although the issue was not raised in the trial court, Cook now contends that the city of Akron failed to prove that the "no left turn" signs were placed pursuant to lawful authority.

Cook relies on *Columbus v. Gibbons* (Mar. 15, 1988), Franklin App. No. 87AP–681, unreported, 1988 WL 33591. In *Gibbons, supra,* the court was construing a Columbus ordinance which is similar to both the subject Akron ordinance and R.C. 4511.12. The court held that an element of the crime of

disobeying a traffic control device is that the sign was placed under the authority of the service director. Because there was no proof of such fact, the appellate court reversed the conviction. We cannot tell from the opinion whether that issue had been raised in the trial court. We believe *Gibbons* is distinguishable.

It has been held that once the prosecution has proved that a traffic control device exists in a specific location, such device is presumed to be official and properly placed, and the burden of going forward to rebut such presumption falls on the defendant. *Independence v. Peterson* (Mo.App.1977), 550 S.W.2d 860; *State v. Piscopio* (1976), 117 R.I. 300, 366 A.2d 146; *State v. Cooper* (1974), 129 N.J.Super. 229, 322 A.2d 836. These cases were decided before *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, and later cases which hold that conclusive presumptions and burden-of-proof-shifting presumptions are unconstitutional.

While conclusive presumptions and burden-of-proof-shifting presumptions have been struck down by the United States Supreme Court, that court has made it clear that permissive inferences do not suffer from the same constitutional infirmity, provided it is made clear to the trier of fact that the inference to be drawn from an established fact is not mandatory. *Carella v. California* (1989), 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218; *Rose v. Clark* (1986), 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460.

We first note that it has been held that in absence of evidence to the contrary, public officials, administrative officers, and public authorities, within the limits of the jurisdiction conferred upon them by law, will be presumed to have properly performed their duties in a regular and lawful manner and not to have acted illegally or unlawfully. *State, ex. rel. Speeth, v. Carney* (1955), 163 Ohio St. 159, 56 O.O. 194, 126 N.E.2d 449, paragraph ten of the syllabus. This is expressed in the legal maxim, *omnia praesumuntur legitime facta danec probetur in contrarium*, that is, all things are presumed lawfully done, until proof be made to the contrary. *Cooper, supra*, 129 N.J.Super. at 232, 322 A.2d at 838. We also note that it is a crime to place an unauthorized traffic control device. R.C. 4511.16.

█ Accordingly, we hold that when it has been established that a traffic control device exists, a permissive inference arises that such device was placed pursuant to lawful authority. See, generally, 1 Weinstein's Evidence (1989), Section 303.

Because there was evidence that the "no left turn" signs existed, the trial court was permitted to infer that they were placed with authority. The first assignment of error is overruled.

Assignments of Error

"II. The trial court erred in enforcing against defendant-appellant the provisions of Akron City Code Section 70.20(A) when an official sign was not in proper position and sufficiently legible to be seen by an ordinarily observant person.

"III. The trial court erred in that the finding of guilt was against the manifest weight of the evidence which weighs heavily against the conviction and such finding created a manifest miscarriage of justice."

Akron City Code Section 70.20(B) provides in part:

"(B) No provision of such sections for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person.  * * * "

Cook claims the signs were either not present, or if present, not legible. Generally, a reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. The test is whether, after reviewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218, 485 N.E.2d 717, 720; *State v. Smith* (Mar. 14, 1990), Summit App. No. 14231, unreported, 1990 WL 28104. It raises a question of law, the resolution of which does not allow the reviewing court to weigh the evidence. *Id.*

In the case *sub judice,* the city presented evidence that the "no left turn" signs were in proper position and sufficiently legible to be seen by an ordinarily observant person. Further, the city presented evidence that the left turn arrow was not operating at the time of the citation.

We hold that the city presented sufficient evidence from which the court, as the trier of fact, could have found beyond a reasonable doubt all the essential elements of a violation of Akron City Code Section 70.20.

There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. This court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Martin, supra; Smith,*

*supra.* The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

█ The record fails to show that the trial judge, as the trier of fact, clearly lost her way. Therefore, Cook's conviction for violating Akron City Code Section 70.20 is not a manifest miscarriage of justice, as being against the weight of the evidence. The second and third assignments of error are overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., and BAIRD, J., concur.