OPINION
Defendant-appellant, Luis Rivera ("appellant"), appeals the December 15, 2000 judgment entry by the Ashtabula County Court of Common Pleas, sentencing appellant after a jury found him guilty of driving under the influence. Appellant raises error only to the trial court's denial of his motion to suppress the evidence. For the following reasons, we affirm the judgment of the lower court.
In May 2000, the Ashtabula County Grand Jury indicted appellant for one count of driving under the influence, in violation of R.C. 4511.19(A)(1), a felony of the fourth degree.[1] On May 16, 2000, appellant filed a motion to suppress. A suppression hearing was held on July 13, 2000. During the suppression hearing, Patrolman Skip Gray testified that, on February 27, 2000, at approximately 5:30 a.m., while patrolling a high drug area, he observed a vehicle passing his police cruiser with the driver yelling something at him. Patrolman Gray followed the vehicle. The vehicle stopped to pick up a female who was walking along the street. Patrolman Gray testified the vehicle then failed to stop at the stop sign at Gary Avenue and West 44th Street. Patrolman Gray further testified he observed erratic driving and observed the vehicle making a wide left turn onto Elm Avenue and going left of center. Patrolman Gray activated his lights and stopped the vehicle. After giving the dispatcher the vehicle's license plate number, Patrolman Gray approached the vehicle. Appellant was operating the vehicle. Patrolman Gray testified there was a strong odor of alcohol coming from appellant, appellant's eyes were glassy, and his speech was slurred. The license plate check subsequently indicated appellant's license was suspended. Patrolman Gray conducted a field sobriety test. Appellant was arrested and issued a citation for driving under the influence, driving under suspension, and a seat belt violation. Appellant refused to take a BAC (breathalyzer) test at the police station.
Contrary to Patrolman Gray's testimony at the suppression hearing, appellant testified when he passed Patrolman Gray, someone was yelling, but it was not him because his windows were up. Appellant also testified there was a stop sign at West 44th Street and Gary Avenue, but he stopped at the sign. Appellant testified when he asked Patrolman Gray for the reason for his stop, Patrolman Gray responded, "bad area," but did not mention the stop sign or jerky movements. Appellant testified, after performing a field sobriety test, he informed Patrolman Gray of his "bad nerve ends and contusions" and stated he did not want to proceed. Appellant also testified that he had a couple of drinks, but it was earlier that evening while he was working as a D.J.
In a judgment entry filed July 20, 2000, the trial court overruled appellant's motion to suppress, stating, in reviewing all the facts, Patrolman Gary observed appellant operating his vehicle in an erratic manner. A jury trial commenced on September 12, 2000, returning a verdict of "guilty". The September 14, 2000 judgment entry by the trial court reflected the jury verdict. A judgment entry of sentence was filed on December 15, 2000, sentencing appellant to sixty (60) days at the North East Ohio Community Alternative Program, a $750 fine, and a one (1) year suspension of his driver's license. Appellant was ordered to two (2) years of community control. On January 11, 2001, appellant filed a timely notice of appeal, asserting the following assignment of error:
 "The trial court erred to the prejudice of appellant when it failed to grant appellant's motion to suppress."
 In appellant's sole assignment of error, appellant opines the state failed to meet its burden that there was a traffic violation of R.C. 4511.43, failure to stop at a stop sign, because the state needed to produce at least some evidence the stop sign which he failed to stop at was in compliance with the requirements of the Ohio Manual for Uniform Traffic Control Devices for Streets and Highways ("Manual"). Appellant argues there was no evidence presented as to the stop sign's shape, color, size, or placement; thus, the lack of such evidence defeats the state's argument that his failure to stop was a traffic violation, which created "reasonable suspicion." Appellant avers compliance under the Manual is an element of any offense under Chapter 45 of the Ohio Revised Code, relating to a failure to obey a traffic control device.
The sole issue raised in the instant appeal is whether the state was required to present evidence during the suppression hearing that the stop sign at issue complied with the Manual. The record demonstrates that appellant did not raise such issue at anytime during the suppression hearing or even at trial. Specifically, in his motion to suppress, appellant argued mere presence in a high crime area does not suspend the protections of the Fourth Amendment, and a police officer may not stop an individual merely because he "looked suspicious." Appellant added there was not any reasonable suspicion to warrant the stop because his activities were consistent with innocent behavior. Additionally, the transcript of the suppression hearing reveals that appellant testified there was a stop sign at West 44th Street and Gary Avenue, but he stopped at the sign. However, appellant did not raise any argument concerning the stop sign's compliance with the Manual.
Faced with a similar situation in Akron v. Cook (1990),67 Ohio App.3d 640, the court held the prosecution is not required to present direct evidence to prove the lawful placement of a traffic control device when the issue is not raised in the trial court. Once it has been demonstrated that a traffic control device exists in a specific location, an inference arises that the traffic control device was placed pursuant to lawful authority. Id. at 643. Additionally, in Mentor v.Mills (July 22, 1988), Lake App. No. 12-269, unreported, 1988 Ohio App. LEXIS 2962, this court addressed an issue concerning the compliance of two speed limit signs which were more than one foot short of the mandated height set out in section 2E-4 of the Manual. However, unlike the case at bar, the defendant raised the argument in the trial court and even presented testimony concerning the deficient height of the signs. See, also, Bowling Green v. McNamara (1999), 132 Ohio App.3d 240, (during trial, the defendant moved to dismiss on the basis the stop sign was not at a proper height as required by the Manual); Lyndhurst v. McGinness
(2000), 138 Ohio App.3d 617, (during trial, the defendant argued the "no turn on red" sign did not meet the Manual requirements). In Mill, we held Mentor failed to rebut the evidence presented at trial by demonstrating the two speed limit signs were properly positioned. Mills
at 6.
In yet another similar situation, State v. Millhouse (Feb. 3, 1995), Lawrence App. No. 94 CA 4, unreported, 1995 Ohio App. LEXIS 538, the Fourth Appellate District held the police officer did not possess the requisite reasonable suspicion of criminal activity to conduct an investigative stop because the stop sign did not substantially comply with the Manual. However, unlike the instant appeal, the defendant raised the issue in his motion to suppress and introduced evidence during the suppression hearing to show the stop sign did not meet the requirements of the Manual. Id. at 2-3.
This court has held a reviewing court need not consider an argument, which the complaining party could have called, but did not call, to the trial court's attention. State v. Porter (Sept. 15, 2000), Portage App. No. 99-P-0061, unreported, 2000 Ohio App. LEXIS 4211, at 8-9, (citingState v. Williams [1977], 51 Ohio St.2d 112, 117); see, also, State v.Peagler (1996), 76 Ohio St.3d 496, 499. Moreover, with a motion to suppress, the Supreme Court of Ohio has held an "accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided."Porter, supra, at 11, (citing State v. Shindler [1994], 70 Ohio St.3d 54).
In the case sub judice, the argument concerning the stop sign's compliance with the Manual was never considered by the trial court during the suppression hearing because appellant never raised the issue. Appellant's motion to suppress did not allege the stop sign was not in compliance with the Manual. Rather, in appellant's motion to suppress, appellant argued mere presence in a high crime area does not suspend the protections of the Fourth Amendment, a police officer may not stop an individual merely because he "looked suspicious," and his activities were consistent with innocent behavior. Further, during the suppression hearing, appellant testified there was, in fact, a stop sign at West 44th Street and Gary Avenue, but he stopped at the sign. Patrolman Gray also testified to the stop sign's existence at that particular intersection. As stated, once it was demonstrated the stop sign at West 44th Street and Gary Avenue existed, an inference arose the traffic control device was placed pursuant to lawful authority. Appellant did not allege otherwise at any time.
Nevertheless, even assuming arguendo that appellant's argument was preserved for appellate purposes, during a suppression hearing, a trial court, acting as the trier of fact, is in the best position to evaluate the evidence, judge the credibility of the witnesses, and resolve the factual issues. State v. Mills (1992), 62 Ohio St.3d 357, 366. When reviewing a trial court's ruling on a motion to suppress, an appellate court is bound to accept the trial court's factual determinations if they are supported by competent and credible evidence. State v. Searls
(1997), 118 Ohio App.3d 739, 741; State v. Harris (1994),98 Ohio App.3d 543. Once an appellate court accepts the trial court's factual determinations as true, the appellate court must conduct a denovo review of the trial court's application of the law to those facts.Id.
In the case before us, the trial court found that Patrolman Gray observed appellant operating his vehicle in an erratic manner. During the suppression hearing, Patrolman Gray testified his articulable suspicion was based upon the traffic violation that appellant committed when he ran the stop sign. Patrolman Gray added that the vehicle was in a high drug activity area at 5:30 a.m. and the driver yelled something at him. Patrolman Gray further testified that, based upon the driver's actions and jerky moves, he was confident the driver had been drinking. The trial court was in the best position to judge the credibility of the only two witnesses, Patrolman Gray and appellant. Upon reviewing the suppression hearing transcript, there is no indication that Patrolman Gray was not a credible witness or that his testimony was not competent. We are bound to accept the trial court's factual determination since it is supported by competent and credible evidence.
Once we accept the trial court's factual determination, we must independently determine the applicable legal standard. The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop an individual, provided the officer has the requisite reasonable suspicion, based upon specific and articulable facts that a crime has occurred or is imminent. Terry v. Ohio (1968),392 U.S. 1; see, also, Maumee v. Weisner (1999), 87 Ohio St.3d 295, 296. In determining whether an investigative stop is proper, a court must examine "the totality of the surrounding circumstances" which provides the basis of the officer's suspicion. Mentor v. Schoenfeld (Aug. 20, 1999), Lake App. No. 98-L-141, unreported, 1999 Ohio App. LEXIS 3884, at 3-4, (citing State v. Bobo [1988], 37 Ohio St.3d 177, paragraph one of the syllabus).
This court has stated that a police officer "must observe some indicia of erratic driving" before stopping a vehicle. State v. Spikes (June 9, 1995), Lake App. No. 94-L-187, unreported, 1995 Ohio App. LEXIS 2649, at 8. Any traffic violation, even a minor traffic violation, witnessed by a police officer is, standing alone, sufficient grounds to stop the vehicle observed violating the ordinance. State v. Cosari (Mar. 30, 2001), Portage App. No. 99-P-0120, unreported, 2001 Ohio App. LEXIS 1562, at 6;State v. Yemma (Aug. 9, 1996), Portage App. No. 95-P-0156, unreported, 1996 Ohio App. LEXIS 3361. "Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated." Yemma at 6-8.
In the instant case, accepting the trial court's factual determination that appellant was driving in an erratic manner as true and examining "the totality of the surrounding circumstances," the basis of Patrolman Gray's requisite reasonable suspicion was based upon specific and articulable facts. Specifically, the trial court narrowed its focus to Patrolman Gray's testimony that he observed appellant's driving ability and jerky movements, demonstrating the likelihood that the driver was intoxicated.
For the reasons stated, appellant's sole assignment of error is without merit. The judgment of the Ashtabula County Court of Common Pleas is hereby affirmed.
JUDGE DIANE V. GRENDELL, O'NEILL, P.J., NADER, J., concur.
[1] Appellant was charged with a felony of the fourth degree as a result of his three prior convictions for driving under the influence within six years.