OPINION
{¶ 1} Appellant, Terence T. Blair, appeals the September 12, 2005 judgment entry of the Chardon Municipal Court, adopting the April 6, 2005 decision of the magistrate, and finding him guilty of a stop sign violation.
 {¶ 2} On December 7, 2004, Officer Edward Svoboda ("Officer Svoboda") of the South Russell Police Department issued a stop sign citation to appellant, in violation of South Russell Ordinance ("SRO") 414.01. On the citation, Officer Svoboda indicated that the area was residential, rather than business, rural, industry, or school. Appellant entered a not guilty plea at his initial appearance.
 {¶ 3} The following facts were revealed at the trial held in front of a magistrate on February 2, 2005.[1] Officer Svoboda testified that around 3:40 p.m. on December 7, 2004, he was parked in a driveway near the intersection of Daisy Lane and Woodside Road in the Village of South Russell ("Village"). He was aiming his radar unit toward Woodside Road when he witnessed appellant approach a stop sign on Daisy Lane, slow his vehicle to about five to ten m.p.h., and then proceed to go through the stop sign without stopping. He then effectuated a stop of appellant's vehicle and issued a citation to him. Officer Svoboda testified that at first, appellant stated that he believed he stopped at the stop sign. However, appellant later told Officer Svoboda that the stop sign was illegally posted and that he would continue to violate it.
 {¶ 4} On cross-examination, Officer Svoboda stated that he rarely sees parked cars in the area. However, when asked if he sees pedestrians in the area, he responded, "all the time." Officer Svoboda also testified that he would characterize the neighborhood, specifically the Daisy Lane/Woodside area, as a residential development. In addition, Officer Svoboda agreed that he marked "residential" when he issued the citation to appellant.
 {¶ 5} Appellant's mother, Ms. Blair, also testified. She identified a picture, marked as exhibit A, as being a stop sign in the Daisy Lane/Woodside area that was taken in 2003. She indicated that in the picture, she is standing beside the stop sign and that her height is approximately five feet tall. The picture shows that the bottom edge of the stop sign was slightly higher than the top of Ms. Blair's head. She also testified that earlier that day, she went to the area identified in the picture, and that it looked the same as it did in the photo.
 {¶ 6} On cross-examination, appellant testified that the stop sign was sixty-two inches (five feet, two inches) from the ground to the bottom edge of the sign. He also admitted that he did not come to a complete stop at the stop sign on December 7, 2004.
 {¶ 7} On April 6, 2005, the magistrate issued his decision, finding appellant guilty of violating SRO 414.01 and fining him $50 plus costs. On April 20, 2005, appellant filed objections to the magistrate's decision. On April 21, 2005, the trial court denied appellant's objections, but did not adopt the magistrate's decision. On May 20, 2005, appellant timely filed his notice of appeal. On September 2, 2005, this court determined that the judgment appellant was appealing was not final and appealable due to the trial court's failure to adopt the magistrate's decision after it overruled his objections. We remanded the case sua sponte for twenty days for the sole purpose of the trial court adopting the magistrate's decision.
 {¶ 8} On September 12, 2005, the trial court again denied appellant's objections, adopted the magistrate's decision, and found appellant guilty of a stop sign violation. It is from this judgment that appellant appeals, raising the following assignments of error:
 {¶ 9} "[1.] The [m]agistrate erred, as did the [c]ourt concurring, in concluding the evidence that a stop sign placed 1' 10["] below the minimum height required by the Ohio Manual on Uniform Traffic Control Devices (OMUTCD) in a residential zone where pedestrians and parking are found is insufficient to overcome the presumption that the sign was placed in conformance with the OMUTCD and therefore the state was not required to present evidence that the sign strictly conformed to the OMUTCD. * * *
 {¶ 10} "[2.] The [m]agistrate erred, as did the [c]ourt concurring, in concluding that the evidence about cost, accidents, and traffic volume raised questions, but was insufficient to counterbalance the presumption of proper legislative enactment in the erection of a stop sign. * * *"
 {¶ 11} In his first assignment, appellant argues that the trial court's conclusion was contrary to law.
 {¶ 12} "[T]he goal of traffic laws and regulations is to promote highway safety." Maple Heights v. Smith (1999),131 Ohio App.3d 406, 408. R.C. 4511.09 provides that, "[t]he department of transportation shall adopt a manual and specifications for a uniform system of traffic control devices[.]" This manual is the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"). Maple Heights at 408.
 {¶ 13} R.C. 4511.07(A) permits local authorities to regulate "the stopping, standing, or parking of vehicles[.]" However, local authorities "shall place and maintain traffic control devices in accordance with the [OMUTCD] * * *." R.C. 4511.11(A). Further, R.C. 4511.11(D) mandates that, "[a]ll traffic control devices erected on a public road, street, or alley, shall conform to the state manual and specifications."
 {¶ 14} Section 2E-4 of the OMUTCD provides that: "* * * except as noted below, signs erected * * * in rural districts shall be mounted at a height of at least 5 feet measured from the bottom of the sign to the near edge of the pavement. In business, commercial and residential districts where parking and/or pedestrian movement is likely to occur or where there are other obstructions to view, the clearance to the bottom of the sign shall be at least seven feet."
 {¶ 15} If "an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person[,]" then it shall not be enforced against an alleged violator. R.C. 4511.12(A). Thus, "`[t]here is no criminal liability for violation of a traffic control device that is unofficial,' i.e., not `in conformity with' the [OMUTCD]."Lyndhurst v. Dawson, 8th Dist. No. 81288, 2002-Ohio-7071, at ¶ 11, quoting Lyndhurst v. McGinness (2000), 138 Ohio App.3d 617,621.
 {¶ 16} In the case sub judice, there is no dispute that the stop sign was sufficiently legible. Thus, the sole issue in this assignment is whether appellant presented sufficient evidence to rebut the presumption afforded to public authorities that the stop sign was in the proper position. We conclude that he did.
 {¶ 17} In Akron v. Cook (1990), 67 Ohio App.3d 640, 643, the court stated: "it has been held that in absence of evidence to the contrary, public officials, administrative officers, and public authorities, within the limits of the jurisdiction conferred upon them by law, will be presumed to have properly performed their duties in a regular and lawful manner and not to have acted illegally or unlawfully. State, ex. rel. Speeth v.Carney (1955), 163 Ohio St. 159, * * * paragraph ten of the syllabus. This is expressed in the legal maxim, omniapraesumuntur legitime facta danec probetur in contrarium, that is, all things are presumed lawfully done, until proof be made to the contrary." (Parallel citations omitted.)
 {¶ 18} The trial court was correct in relying on Dawson,
supra, for the proposition that "if the record contains evidence upon which to base a presumption the traffic control device conforms with the [OMUTCD], the defendant may demonstrate that it does not. * * * This is more in the nature of an affirmative defense, which is in accord with the analyses set forth by other Ohio appellate districts that have considered the issue." Id. at ¶ 13, citing, State v. Rivera, 11th Dist. No. 2001-A-0005, 2001-Ohio-4322; State v. Millhouse (Feb. 3, 1995), 4th App. No. 94 CA 4, 1995 Ohio App. LEXIS 538; Cook, supra; and Mentor v.Mills (July 22, 1988), 11th Dist. No. 12-269, 1988 Ohio App. LEXIS 2962. However, we conclude that the trial court incorrectly applied the facts to this legal standard.
 {¶ 19} At trial, appellant demonstrated that the height of the sign was sixty-two inches (five feet, two inches). According to Section 2E-4 of the OMUTCD, this height is proper if the sign is erected in a rural district. However, in a residential district, "where parking and/or pedestrian movement is likely to occur[,]" then the sign must be at least seven feet.
 {¶ 20} Appellee contends that the Village is a rural area. Appellee concedes that the Daisy Lane/Woodside area is zoned residential, but maintains that it is still rural, and as such, the sign is at the proper height. Appellee spends a great deal of time in its brief arguing that the Village is not urban. However, whether or not an area is urban is irrelevant. Under section 2E-4 of the OMUTCD, an area can still be considered rural and
residential. This provision begins with an exception to the rule; i.e, "except as noted below[.]" Thus, in a rural district, signs shall be at least five feet, except as noted below — where theymay also be residential and where pedestrian movement and/or parking is likely to occur.
 {¶ 21} With respect to this issue, the trial court stated, "[a]s to the mounting height of the stop sign in question, the height of 5 feet 2 inches conforms to the OMUTCD, unless the sign is located where parking or pedestrian movements occur. Obviously, any location next to a roadway is one at which some parking or pedestrian movement could occur. It is a discretionary determination vested in the properly authorized public official as to whether the occurrence of parking or pedestrian movement in the vicinity of the sign in question warrants a mounting height of at least 2.1 m (7 ft)." We disagree.
 {¶ 22} The OMUTCD manual states that if the area is residential where pedestrian movement is likely to occur, then the sign shall be at least seven feet. Here, appellant established, through the cross-examination of Officer Svoboda, that the Daisy Lane/Woodside area is a residential district, where pedestrians are present "all the time." Appellee did not present any evidence to contradict this testimony. Thus, in a residential district where pedestrians are likely to occur, it was not a "discretionary determination," but a legislative mandate.
 {¶ 23} In Mills, supra, at 6, in a case analogous to the instant one and dealing with the same section of the OMUTCD, this court stated:
 {¶ 24} "R.C. 4511.12 states that no provision for which the traffic signs are required shall be enforced if the sign is not in proper position. The appellant demonstrated that the signs in question were improperly placed. They were in a residential area where parking and/or pedestrian movement was likely to occur, but were not at least seven feet high pursuant to section 2E-4 of the `[OMUTCD].' In the face of adversarial evidence establishing that the two speed limit signs were improperly placed, the appellee has failed to rebut the evidence and demonstrate that the two signs were properly positioned in accordance with R.C. 4511.12. The assignment is well taken."
 {¶ 25} In Mills, the fact that the area was residential was not contested. However, the prosecutor in Mills offered no contradictory evidence as to the height of the sign. Here, the prosecutor offered no contradictory evidence as to the height of the sign, no contradictory evidence that the area was not "residential," and no contradictory evidence that this was not an area where pedestrians were present "all the time."
 {¶ 26} Accordingly, appellant's first assignment of error is well-taken.
 {¶ 27} In his second assignment, appellant argues that the trial court erred when it concluded that appellant did not present sufficient evidence to rebut the presumption that appellee acted lawfully when it placed the stop sign according to SRO 406.01. Here, appellant challenges the sufficiency of the evidence.
 {¶ 28} This court set forth the test for sufficiency of the evidence in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862. In Schlee at 13, we stated that, "`[s]ufficiency' challenges whether the prosecution has presented evidence on each element of the offense * * *." We further explained that:
 {¶ 29} "`"(* * *) [t]he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claimof insufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * *"'" Id. (Emphasis sic.) (Citations omitted.) "In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is legally sufficient to sustain a verdict * * *." State v. Thompkins (1997),78 Ohio St.3d 380, 386. Further, we note that the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 30} SRO 406.02 states that "[a]ll traffic control devices placed pursuant to the provisions of this Traffic Code shall conform to the [OMUTCD], set forth in [R.C.] 4511.09." SRO 406.01 authorizes the chief of police to place and maintain traffic control devices. Specifically, it provides that: "[t]he [c]hief shall determine the location, timing and coordination of such traffic control devices upon the basis of an applicable engineering or traffic investigation and shall consider the following:
 {¶ 31} "(a) The maximum safety and protection of vehicular and pedestrian traffic from physical injury or property damage.
 {¶ 32} "(b) The existing and potential traffic movement, volume and conditions.
 {¶ 33} "(c) The location and frequency of accidents, including studies of remedial measures.
 {¶ 34} "(d) The recommendations of the [f]ire [c]hief.
 {¶ 35} "(e) The acceleration of transportation of persons and property by vehicles so as to expedite travel and promote public safety.
 {¶ 36} "(f) The convenience and welfare of the general public in parking, standing, loading and unloading, and the use of the streets as affecting business concerns and places of assembly.
 {¶ 37} "(g) Economy in the expenditure of money."
 {¶ 38} As we stated previously, in the absence of evidence to the contrary, public officials will be presumed to have properly performed their duties in a regular and lawful manner and not to have acted illegally or unlawfully. Cook, supra, at 643.
 {¶ 39} In the case sub judice, appellant offered no evidence to the contrary that the chief of police did not lawfully perform his or her duty in deciding to erect a stop sign at the intersection of Daisy Lane and Woodside Road. Appellant attempted to establish that the chief of police did not act in a lawful manner when he cross-examined Officer Svoboda. However, appellant, being an attorney himself, should have known that an employee of the Village, with no supervisory authority, power, or traffic investigation duties regarding traffic control devices, would not be able to answer the questions appellant asked him, such as whether a traffic investigation was done, whether the police chief consulted the fire chief, or how many accidents have occurred at the intersection in question. Not surprisingly, Officer Svoboda responded that he did not know the answer to any of the questions appellant posed to him on this issue.
 {¶ 40} Appellant did offer some of his amateur estimations as to how many cars travel through the intersection at different times of the day and how much this particular stop sign costs motorists every day. However, this "evidence" is not sufficient to rebut the presumption that the public authorities of the Village properly performed their duties and acted in a lawful manner in deciding to erect the stop sign. Cook, supra, at 643.
 {¶ 41} Appellant's second assignment of error lacks merit.
 {¶ 42} As such, appellant's first assignment of error is well-taken. His second assignment of error is overruled. The judgment of the Chardon Municipal Court is reversed on the first assignment and judgment is entered for appellant.
Rice, J., concurs, Grendell, J., dissents with a Dissenting Opinion.
[1] Appellant is a licensed attorney and represented himself at trial and on appeal.