SHAPIRO, APPELLANT, *v.* BUTTS, APPELLEE.

(No. 4397—Decided June 5, 1950.)

*Messrs. Herbert & Dombey,* for appellant.
*Messrs. Benoy & Sebastian,* for appellee.

MILLER, P. J.   This cause comes before this court upon appeal on questions of law from the Court of Common Pleas of Franklin County.   The action arose out of an automobile accident at the intersection of 18th and Fulton streets in the City of Columbus on October 18, 1947.   The plaintiff was a passenger in an automobile proceeding in a southerly direction on 18th street.   The defendant was the driver of an automobile proceeding in an easterly direction on Fulton street.   The two vehicles came into collision in the intersection of 18th and Fulton streets, resulting in certain injuries to the plaintiff.

The record conclusively shows that on the southwest corner of said intersection there was a stop sign on Fulton street which contained the word "Stop" in letters five inches in height.   It was stipulated and agreed by counsel that by ordinance 18th street is designated a "through street."   Counsel for the ap-

pellee, however, are contending that it was not a "through street" because the sign did not meet the statutory requirements. At the close of all the evidence and before argument, on the basis of the uncontradicted evidence that the stop sign contained letters only five inches in height, counsel for the defendant requested the court to instruct the jury that said sign did not meet the legal requirements; that 18th street was not a through highway and that the defendant being to the right had the right of way provided he was proceeding in a lawful manner. The court so instructed the jury which returned a verdict in favor of the defendant. All the assignments of error are grounded upon the special instructions given to the jury at the defendant's request as previously stated.

The record discloses that the stop sign in question was installed on May 22, 1939. Although it was stipulated and agreed that by ordinance 18th street was designated a through street, the record is silent as to the date of the adoption of said ordinance. In the absence of a showing to the contrary it must be presumed that the stop sign was lawfully erected on said date. *Bartlett* v. *McDonald*, 59 Ohio App., 85, 17 N. E. (2d), 284. The authority of a municipality to create additional "main thoroughfares" on May 22, 1939, was found in Section 6310-32, General Code (114 Ohio Laws, 161), which provided:

"Local authorities shall have the right to designate by ordinance or resolution additional main thoroughfares and to designate what vehicles shall have the right of way at intersections of main thoroughfares; provided, however, that legible and appropriate signs be erected along the roads and highways intersecting such main thoroughfares, and that such signs outside the corporate limits of a municipality, shall not be nearer than one hundred feet from such intersection."

It will be noted that the above section of the General Code required only that "legible and appropriate signs be erected." The record clearly establishes that the sign met these requirements. Therefore, 18th street became a main thoroughfare on May 22, 1939, and was such on October 18, 1947, provided Section 6307-63 (c), General Code, does not have application. In order to determine the requirements of this subsection of the Code it becomes necessary to consider also Section 6307-63 (b), General Code, which requires the erection of stop signs. These subsections of the General Code became effective September 6, 1941, and provide:

"(b) The department with reference to state highways, and local authorities with reference to other highways under their jurisdiction may designate additional through highways and shall erect stop signs on all streets and highways intersecting such through highways, or may designate any intersection as a stop intersection and shall erect like signs at one or more entrances to such intersection.

"(c) Every said sign shall bear the word 'stop' in letters not less than six inches in height. Every stop sign shall be located as near as practicable at the property line of the highway at the entrance to which the stop must be made, or at the nearest line of the crosswalk thereat, or, if none, at the nearest line of the roadway."

Now when these subsections became effective, did the General Assembly intend to void every ordinance of every city and town in the state that had authorized stop signs whose letters were less than six inches in height? Certainly if such was the intention the General Assembly would have so expressed itself, but it did not do so. It merely authorizes local authorities after the date of the enactment to create "additional

through highways'' and in so doing stop signs shall be erected bearing the word ''stop'' in letters not less than six inches in height. It is apparent that 18th street could not have been designated a ''through highway'' under Section 6307-63, General Code, as this section had not been enacted when it was created. As previously stated, 18th street was created a stop street by virtue of Section 6310-32, General Code, and all of its requirements were fully complied with. Upon the repeal of Section 6310-32, General Code, on September 6, 1941, and the enactment on that date of Section 6307-63, General Code, the authority of the municipality was continued and it was not necessary that a new ordinance be enacted. As the record is silent on this point the presumption must prevail that a new ordinance was not enacted under the new authority. The General Assembly must also be presumed to have been cognizant of the fact that numerous through highways, had been created by ordinance prior to September 6, 1941, which were required to be marked only by ''legible and appropriate signs,'' and upon its failure to include them in Section 6307-63(c), General Code, we conclude it was the intention not to disturb the stop signs that had been previously legally installed. Therefore the stop sign in question was a valid sign and the court erred in its instruction to the jury.

The judgment is reversed and cause remanded for further proceedings according to law.

*Judgment reversed.*

HORNBECK and WISEMAN, JJ., concur.