CITY OF MAPLE HEIGHTS, Appellee,

v.

SMITH, Appellant.

[Cite as *Maple Hts. v. Smith* (1999), 131 Ohio App.3d 406.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73823.

Decided April 15, 1999.

*Michael G. Ciaravino,* for appellee.

*Timothy J. Kucharski*, for appellant.

---

Porter, Administrative Judge.

Defendant-appellant Christopher Smith appeals from his conviction following a bench trial in Garfield Heights Municipal Court for making an improper left turn in violation of Maple Heights Codified Ordinance 414.01. Defendant contends that his conviction was unlawful because the "No Left Turn" sign was not in compliance with the Ohio Manual for Uniform Traffic Control Devices ("OMUTCD"). For the reasons hereinafter stated, we reverse and vacate the judgment.

On October 9, 1997, Officer William Blaha of the Maple Heights Police Department observed a red semitrailer driven by defendant make an illegal left turn from Broadway Avenue east onto Libby Road. The sign prohibiting such a turn at that intersection was a large, square, illuminated white sign that read in black letters: "No Left Turn." The sign did not contain any arrow, red circle or red prohibition bar. The sign was located approximately twelve inches to the left of the traffic light at the intersection. Officer Blaha immediately stopped defendant and cited him for making the illegal left turn.

On October 30, 1997, defendant appeared in the Maple Heights Mayor's Court, pled not guilty and requested that the matter be transferred to the Garfield Heights Municipal Court. After the case was transferred, defendant pled not guilty and his case was scheduled for a bench trial.

On December 3, 1997, the case proceeded to trial where defendant and Officer Blaha testified. During his testimony, defendant confirmed that he had made a left turn from Broadway Avenue onto Libby Road. Defendant testified that he believed that the sign read "No Turn On Red" but confirmed after later revisiting the intersection that the sign legibly reads "No Left Turn."

Defendant asserted that the sign was not illuminated at 11:05 p.m. when he made his illegal left turn and therefore it was difficult to see the sign. The city conceded that the sign did not conform with the OMUTCD, but was nevertheless legible and enforceable. The trial court found defendant guilty of the charged violation and this appeal ensued.

Defendant's sole assignment of error states as follows:

"The trial court committed reversible error when it convicted appellant where the traffic control sign was not in conformity with the Ohio Manual of Uniform Traffic Control Devices and R.C. 4511.12."

R.C. 4511.09 establishes that the Ohio Department of Transportation shall adopt a manual and specifications for a uniform system of traffic control devices.

408

This manual is the OMUTCD. R.C. 4511.11(D) further establishes that "[a]ll traffic control devices erected.on a public road, street, or alley, shall conform to the state manual and specifications." Local authorities must place and maintain traffic control devices in accordance with the manual. R.C. 4511.11(A) and (D).

■ In general, the goal of traffic laws and regulations is to promote highway safety. *Shapiro v. Butts* (1950), 89 Ohio App. 377, 46 O.O. 159, 102 N.E.2d 270. The purpose of the OMUTCD requirements regarding the form, placement, and erection of traffic signs is to promote uniformity and to insure that traffic signs are installed under the same general standards and are able to be seen and recognized by the typical, ordinary observant driver. See R.C. 4511.12. R.C. 4511.12 requires a driver of a vehicle to obey all traffic control devices, except such devices as are not properly positioned and sufficiently legible to be seen by ordinary observant persons.

■ Defendant does not allege on appeal that the sign prohibiting a left turn at the intersection of Broadway Avenue and Libby Road in the city of Maple Heights was improperly positioned or not sufficiently legible to be seen by ordinarily observant persons. He does assert, however, that since the sign at that intersection was not an "official" sign in conformity with the OMUTCD he cannot be convicted of making an illegal left turn.

Thus, defendant maintains that the only "official" sign that can be enforced prohibiting a motorist from making a left turn at an intersection must be that exactly prescribed by the OMUTCD. In other words, the "No Left Turn" sign must be "rectangular, have a white background with a black arrow beginning near the bottom of the sign and going straight up and thereafter making a 90 degree left turn three quarters of the way up the sign. Further, this black arrow shall be centered in a red circle with a red prohibition bar bisecting the circle from the upper left corner to the lower right corner."

This is consistent with OMUTCD Section 2J–9, R–121. In the instant case, the sign prohibiting the left turn was square with a white background. However, instead of depicting a left turn black arrow in a red circle with a red prohibition bar through the arrow, the sign at issue simply read: "No Left Turn."

Apparently, the precise issue presented is a novel one in this district. Some Ohio courts have held that traffic control devices that do not strictly comply with the OMUTCD requirements are not enforceable. See *Mentor v. Mills* (July 22, 1988), Lake App. No. 12–269, unreported, 1988 WL 76764; *State v. Trainer* (1995), 79 Ohio Misc.2d 62, 670 N.E.2d 1378; *Cincinnati v. Evers* (1993), 63 Ohio Misc.2d 220, 621 N.E.2d 905. However, there appears to be some conflicting authority as to whether a municipality must strictly comply with OMUTCD requirements regarding the placement and form of traffic control devices in order

to be enforceable. Given this apparent split of authority, we choose to analyze the statutory predicates of the controversy.

The Ohio Legislature has provided a detailed statutory scheme vesting the Department of Transportation with plenary authority to develop a uniform system of traffic control devices. R.C. 4511.09 states:

"The department of transportation shall adopt a manual and specifications for a uniform system of traffic control devices, including signs denoting names of streets and highways, for use upon highways within this state. Such uniform system shall correlate with, and so far as possible conform to, the system approved by the American Association of State Highway Officials."

R.C. 4511.10:

"The department of transportation may place and maintain traffic control devices, conforming to its manual and specifications, upon all state highways as are necessary to indicate and to carry out sections 4511.01 to 4511.78 and 4511.99 of the Revised Code, or to regulate, warn, or guide traffic.

"No local authority shall place or maintain any traffic control device upon any highway under the jurisdiction of the department except by permission of the director of transportation."

R.C. 4511.11:

"(A) Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices, adopted under section 4511.09 of the Revised Code, upon highways under their jurisdiction as are necessary to indicate and to carry out sections 4511.01 to 4511.76 and 4511.99 of the Revised Code, local traffic ordinances, or to regulate, warn, or guide traffic.

" * * *

"(D) All traffic control devices erected on a public road, street, or alley, shall conform to the state manual and specifications.

"(E) No person, firm, or corporation shall sell or offer for sale to local authorities any traffic control device that does not conform to the state manual and specifications, except by permission of the director.

"(F) No local authority shall purchase or manufacture any traffic control device that does not conform to the state manual and specifications, except by permission of the director."

R.C. 4511.12:

"No pedestrian, driver of a vehicle, or operator of a streetcar or trackless trolley shall disobey the instructions of any traffic control device placed in accordance with this chapter, unless at the time otherwise directed by a police officer.

"No provision of this chapter for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person. Whenever a particular section of this chapter does not state that signs are required, that section shall be effective even though no signs are erected or in place."

Even a cursory review of these statutes would suggest that the city could not criminally enforce the violation of a traffic control device which is not compatible with the uniform code prescribed by OMUTCD. As expressly stated above in R.C. 4511.12, the sign at issue must be an "official sign" in order to be enforced against an alleged violator. The court in *Trainer, supra*, 79 Ohio Misc.2d at 63, 670 N.E.2d at 1379, similarly held:

"As a matter of law, for a traffic sign to be 'an official sign * * * in proper position,' the traffic sign must comply with the requirements of the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways as to design, size, and format."

We also are mindful of this court's decision in *State ex rel. Ohio Motorists Assn. v. Masten* (1982), 8 Ohio App.3d 123, 8 OBR 179, 456 N.E.2d 567, which issued a writ of mandamus against the village of Linndale compelling it to conform its traffic control device with the OMUTCD. The syllabus by this court stated:

"1. R.C. 4511.09 and 4511.11, which create a uniform system of traffic control devices within the state of Ohio, are 'general laws' for purposes of Section 3, Article XVIII of the Ohio Constitution, and a municipality therefore lacks constitutional authority to erect traffic control devices which do not conform to the uniform system created by state statute.

"2. Where a village council enacts an ordinance causing a traffic control device to be erected in a location which does not comply with the statewide uniform standard established by statute, the council is subject to a writ of mandamus ordering it to conform the traffic control device to the uniform standard, because R.C. 4511.11 expressly requires local legislative bodies to erect traffic control devices in accordance with the uniform standard."

In analyzing the statutory requirements, this court stated as follows:

"In the case at bar, the pertinent state statute expressly provides that '[l]ocal authorities * * * *shall* place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices * * *.' R.C. 4511.11(A). This statute imposes a clear and mandatory duty upon '[l]ocal authorities.' 'Local authorities' is defined as including any 'local board or body having authority to adopt police regulations.' R.C. 4511.01(AA). This definition includes the Council of the village of Linndale. Thus, under R.C. 4511.11(A), the Linndale Village Council is under a clear and mandatory duty to comply with the Department of Transportation manual, when it erects 'traffic control devices' upon a 'highway.' West 117th Street is clearly a 'highway' within the meaning of R.C. 4511.01(BB), *supra,* and the 'Stop Here on Red' sign and stop line are clearly 'traffic control devices' under R.C. 4511.01(QQ), *supra.* Accordingly, the Linndale Village Council has a clear and mandatory duty to conform its 'Stop Here on Red' sign and stop line to the Department of Transportation manual." *Id.,* 8 Ohio App.3d at 126–127, 8 OBR at 182, 456 N.E.2d at 571.

Under the circumstances, we are persuaded by our decision in *Masten* and those reasoned decisions of other jurisdictions that uphold the primacy of the OMUTCD and find no criminal liability for violation of a traffic control device that is "unofficial" and not in conformity with the OMUTCD. See *Mills, Trainer,* and *Evers, supra.*

Defendant's sole assignment of error is sustained.

The judgment is reversed and vacated; the defendant is discharged.

*Judgment accordingly.*

KARPINSKI and PATRICIA ANN BLACKMON, JJ., concur.