**CITY OF LYNDHURST, Appellee,**

v.

**McGINNESS, Appellant.**

[Cite as *Lyndhurst v. McGinness* (2000), 138 Ohio App.3d 617.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76751.

Decided Sept. 5, 2000.

*Rubin Irl,* City Prosecutor, for appellee.

*Joseph T. McGinness, pro se.*

---

JOHN T. PATTON, Presiding Judge.

Defendant-appellant Joseph T. McGinness (defendant) appeals the decision of the trial court finding that he violated plaintiff-appellee city of Lyndhurst Ordinance 414.10, "no right turn on red." Defendant argues that the no-turn-on-red sign was improperly posted pursuant to the Ohio Manual of Uniform Traffic Control Devices and that the trial court erred by failing to rule on his motion to dismiss prior to trial.

The record indicates that on February 27, 1999, at 4:17 p.m., defendant was driving south on a main thoroughfare in Lyndhurst. Defendant approached an intersection in the curb lane and came to a complete stop. At the intersection, a sign is posted above the intersection and next to the traffic signal that states "NO TURN ON RED." Directly below this sign is a smaller sign with the prohibited times of "7AM–6PM." Defendant stopped for several seconds and made a right turn while the traffic signal was red. Moments later, a Lyndhurst police officer stopped defendant and issued him a ticket. The ticket stated that defendant

violated Ordinance 414.10 by making a right turn on red during the hours of 7:00 a.m. to 6:00 p.m.

On March 11, 1999, defendant filed a motion to dismiss. He argued that the regulatory sign was not posted according to law and thus was an unauthorized sign. Defendant was arraigned and pleaded not guilty. Two months later on June 16, 1999, the case proceeded to trial. The trial court denied defendant's motion to dismiss. Defendant then addressed the trial court and said that according to the Ohio Department of Transportation's Standard Sign Manual there must be a standard RP–23 addition that shows the day and time restrictions. Defendant proceeded to argue that the sign in question did not meet the Standard Sign Manual requirements because the time restriction addition was not an RP–23 addition, so the sign was improperly posted. Subsequently, the trial court found defendant guilty and fined him $25. Defendant timely filed his notice of appeal and now presents two unopposed assignments of error.

■ The first assignment of error states as follows:

"The trial court erred in not making a timely determination prior to trial of the defendant's motion to dismiss in compliance with Traf.R. 11(B) and (E)."

Defendant argues that the trial court violated Ohio Traf.R. 11 by not ruling on his motion to dismiss prior to trial. This assignment of error must be overruled.

Traf.R. 11(E) states:

"A motion made before trial, other than a motion for change of venue, shall be timely determined before trial. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record."

■ This court need not consider an error that a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at the time when such error could have been avoided or corrected by the trial court. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus. In the instant case, the record shows that defendant's motion to dismiss, filed March 11, 1999, was ruled on by the court on June 16, 1999. The record is silent as to whether the defendant had, prior to trial, called the trial court's attention to rule on the motion to dismiss.

■ Moreover, in *State v. Tolbert* (1990), 70 Ohio App.3d 372, 591 N.E.2d 325, the court held that the failure to rule on a pretrial motion prior to trial constitutes error, but the error is harmless unless it adversely affects the substantial rights of the defendant. Defendant does not state how the trial court's failure to rule on his pretrial motion to dismiss adversely affected his substantial rights. Furthermore, our review of the record does not indicate that any of defendant's substantial rights were affected by the trial court's failure to

rule on his motion to dismiss prior to trial. Based on the foregoing, we find defendant's first assignment of error to be without merit.

Defendant's second assignment of error states as follows:

"The trial court erred in denying the motion for directed verdict and finding that the traffic sign in question was in compliance with R.C. Sec. 4511.09 and the Ohio Manual of Uniform Traffic Control Devices."

In his second assignment of error, defendant does not dispute that he made the turn in question but contends that he should be excused from criminal liability because the sign prohibiting the turn does not comply with the Ohio Manual of Uniform Traffic Control Devices ("manual" or "OMUTCD"). Specifically, defendant argues that the smaller sign below the "NO TURN ON RED" sign is an illegal sign because it is not of the proper size, was mounted incorrectly, contains its own continuous border, and has confusing punctuation as the mounting bolts look like a colon between the time restrictions. Consequently, defendant claims that he cannot be held criminally liable for violating a traffic control device that is unofficial and not in compliance with the manual.

R.C. 4511.09 establishes that the Ohio Department of Transportation shall adopt a manual and specifications for a uniform system of traffic control devices. This manual is the Ohio Manual of Uniform Traffic Control Devices. R.C. 4511.11(D) further establishes that "[a]ll traffic control devices erected on a public road, street, or alley, shall conform to the state manual and specifications." Local authorities must place and maintain traffic control devices in accordance with the manual. R.C. 4511.11(A) and (D).

In general, the goal of traffic laws and regulations is to promote highway safety. *Shapiro v. Butts* (1950), 89 Ohio App. 377, 46 O.O. 159, 102 N.E.2d 270. The purpose of the OMUTCD requirements regarding the form, placement, and erection of traffic signs is to promote uniformity and to ensure that traffic signs are installed under the same general standards and are able to be seen and recognized by the typical, ordinary observant driver. See R.C. 4511.12. R.C. 4511.12 requires a driver of a vehicle to obey all traffic control devices, except such devices as are not properly positioned and sufficiently legible to be seen by ordinary observant persons.

The record contains pictures of the signs in question. The signs are mounted on a metal bar that hangs above the intersection. Also mounted on this bar and adjacent to the signs are the traffic lights. The no-turn-on-red sign is rectangular in size and complies with the manual's requirements. Attached to the bottom of the no-turn-on-red sign is the smaller time-limitation sign. This sign states "7AM–6PM," and on the hyphen is what looks like a colon. However, a close inspection of the picture reveals that the colon is actually the mounting bolts for

the smaller sign. In addition, the lower sign has its own boundaries and is extended sideways approximately two inches beyond the border of the no-turn-on-red sign.

At 2L–31, the manual describes a "NO TURN ON RED" sign (R–23) and then goes on to describe the auxiliary plate that allows for the posting of hours or days restrictions. When describing the size of the auxiliary plate the section states that it should be 24″ × 9½″ and "is designed to overlap the basic sign face 3.5 inches so that the overall sign size when the plate is utilized is 24″ × 30″."

Some Ohio courts have held that traffic control devices that do not strictly comply with the OMUTCD requirements are not enforceable. See *Mentor v. Mills* (July 22, 1988), Lake App. No. 12–269, unreported, 1988 WL 76764; *State v. Trainer* (1995), 79 Ohio Misc.2d 62, 670 N.E.2d 1378; and *Cincinnati v. Evers* (1993), 63 Ohio Misc.2d 220, 621 N.E.2d 905.

Similarly, in a recent case out of this district, *Maple Hts. v. Smith* (1999), 131 Ohio App.3d 406, 722 N.E.2d 607, we held there is no criminal liability for violation of a traffic control device that is unofficial and not in conformity with the manual. In *Maple Heights*, we examined the statutory scheme that vests the Department of Transportation with plenary authority to develop a uniform system of traffic control devices. R.C. 4511.09–4511.12. We held that "[e]ven a cursory review of these statutes would suggest that the city could not criminally enforce the violation of a traffic control device which is not compatible with the uniform code prescribed by OMUTCD." 131 Ohio App.3d at 410, 722 N.E.2d at 610. R.C. 4511.12 expressly states that the sign at issue must be an "official sign" in order to be enforced against an alleged violator. Accordingly, Lyndhurst has a clear and mandatory duty to conform its "NO TURN ON RED" sign and attached time limitation sign to the manual.

█ Based on our previous holding in *Maple Heights*, we are persuaded that traffic control devices must adhere to the requirements of the manual in order to be official signs that convey criminal liability. In the instant case, the lower, time-limitations sign did not overlap the no-turn-on-red sign, extended sideways outside the boundaries of the no-turn-on-red sign, and did not meet the overall size requirements. Therefore, defendant could not be held criminally liable for making the right turn on red. The second assignment of error is sustained.

Reversed, judgment vacated, and appellant discharged.

*Judgment accordingly.*

BLACKMON and KILBANE, JJ., concur.