{¶ 43} For the reasons that follow, I respectfully dissent from the majority's judgment and opinion.
 {¶ 44} W hile I agree with the majority's holding that appellant has standing to challenge the stop of the vehicle in which he was a passenger and its description of the current status of the law as it pertains to the Fourth Amendment and its protection of individuals from unreasonable searches and seizures, my application of these principles would lead to a different conclusion.
 {¶ 45} As the majority points out, a stop of an automobile is reasonable when an officer possesses probable cause to believe that an individual has committed a traffic violation. See Whren v. United States
(1996), 517 U.S. 806, 809, 116 S.Ct. 1769; see, also, Dayton v.Erickson, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431, 665 N.E.2d 1091. In the absence of probable cause to believe that the driver of a vehicle has committed a traffic violation, a law enforcement officer generally may not stop the vehicle unless the officer observes facts giving rise to a reasonable suspicion of criminal activity. See, generally, Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868; State v. Andrews (1991),57 Ohio St.3d 86, 565 N.E.2d 1271; State v. Venham (1994),96 Ohio App.3d 649, 654, 645 N.E.2d 831. To justify a traffic stop based upon less than probable cause, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime, including a minor traffic violation. See Dayton v. Erickson,76 Ohio St.3d at 11-12, 1996-Ohio-431, 665 N.E.2d 1091; Terry v. Ohio, supra.
 {¶ 46} In the case sub judice, the trooper stopped the vehicle in which appellant was traveling for what he thought was a traffic violation, an illegal u-turn through an opening in a median. Generally, the observation of a traffic violation by police provides probable cause to initiate a stop of the suspect vehicle. See State/City of Nelsonvillev. Woodrum, Athens App. No. 00CA50, 2001-Ohio-2650; State v. Hodge,147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331; Dayton v. Erickson,76 Ohio St.3d 3, 1996-Ohio-431, 665 N.E.2d 1091, syllabus. However, at the time of this incident, the signs prohibiting U-turns at the crossover used by Brooks were not in compliance with the Ohio Manual of Uniform Traffic Control Devices (OMUTCD).
 {¶ 47} R.C. 4511.11(D) provides that all traffic control devices "shall" conform to the OMUTCD. Further, R.C. 4511.12 prohibits the enforcement of an alleged traffic violation "if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person."
 {¶ 48} U-turns are generally permitted upon Ohio's roadways. See R.C. 4511.35 and 4511.37. When operating a motor vehicle on a divided highway, U-turns are permitted, but only at an "opening, crossover, or intersection established by public authority." R.C. 4511.35. Accordingly, in order to prohibit U-turns at crossovers through the median of a divided highway, signs must be posted instructing drivers not to make U-turns at those crossovers or openings. Those signs must comply with the OMUTCD as promulgated by the Ohio Department of Transportation (ODOT) pursuant to its authority under R.C. 4511.09.
 {¶ 49} In the case sub judice, the signs prohibiting drivers from making U-turns at the crossover in question did not conform with the OMUTCD. The OMUTCD provides that traffic signs such as the ones involved in the present action should be positioned six feet off the ground as measured from the edge of the pavement. In other words, the bottom of the "No U-turn" sign must be six feet above the pavement in order to be properly positioned. The signs at issue in the present case were not properly positioned: one sign was only 4.55 feet higher than the edge of the pavement and the other sign was only 5.25 feet higher than the edge of the pavement.
 {¶ 50} Accordingly, Sergeant Greenwood did not observe a traffic violation because the "No U-turn" signs were not enforceable and did not convey criminal liability upon Brooks. See R.C. 4511.12; Lyndhurst v.McGinness (2000), 138 Ohio App.3d 617, 741 N.E.2d 976; Bowling Green v.McNamara (1999), 132 Ohio App.3d 240, 724 N.E.2d 1175; Maple Hts. v.Smith (1999), 131 Ohio App.3d 406, 722 N.E.2d 607. Since the U-turn observed by the sergeant was proper due to the improperly placed signs, he did not have probable cause to stop the vehicle in which appellee was traveling because the only basis for the stop was a nonexistent traffic violation. The issue then becomes whether the officer observed facts that would give rise to a reasonable suspicion of criminal activity such that he could conduct an investigatory stop of the vehicle. See, generally,Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868; State v. Andrews,57 Ohio St.3d 86, 565 N.E.2d 1271; State v. Venham, 96 Ohio App.3d 649,654, 645 N.E.2d 831.
 {¶ 51} As the majority points out in its opinion, in State v.Millhouse (Feb. 3, 1995), Lawrence App. No. 94CA4, the defendant was stopped for failing to stop at a stop sign and was eventually arrested for driving under suspension. The defendant moved to have all evidence obtained following the stop suppressed, but his motion was denied. Upon review, this Court noted that the arresting officer's observation of the defendant running the stop sign would ordinarily provide sufficient basis to initiate a stop of the vehicle. However, the stop sign in question did not comply with the OMUTCD. In reversing the defendant's conviction, we concluded as follows: "Thus, after our review of the evidence adduced below, we conclude that because the stop sign did not substantially comply with the OMUTCD requirements, [law enforcement] did not possess the requisite reasonable suspicion of criminal activity to permit an investigatory stop of appellant's vehicle. Consequently, the evidence obtained after the stop of appellant's vehicle, including the evidence relating to the status of appellant's operator's license, must be suppressed." See id.
 {¶ 52} I am not convinced by the majority's attempt to factually distinguish or limit Millhouse based on the condition of the traffic sign in that case as compared to the signs in this case. There is little doubt that the sign in Millhouse was in worse condition than the signs involved in the present case. However, the fact remains that none of the signs fully complied with the OMUTCD. Accordingly, I would hold in accordance with our prior decision in Millhouse, that "because the stop sign did not substantially comply with the OMUTCD requirements, [the trooper] did not possess the requisite reasonable suspicion of criminal activity to permit an investigatory stop of appellant's vehicle," and conclude that all evidence obtained following the stop should be suppressed.
 {¶ 53} Since the state is charged with the proper placement, maintenance, and enforcement of traffic signs, I would conclude that it should not be permitted to rely on faulty or improperly placed signs as a basis for conducting traffic stops, just as violations of improper signs cannot be deemed criminal conduct.
 {¶ 54} Therefore, I respectfully dissent.