JUDGE EMANUELLA GROVES
*770 Facts
On January 27, 2018, James P. Barker, Jr., Defendant, was traveling southbound on West 130th Street in Cleveland, Ohio and made a U-turn at the front opening of the grassy island to enter onto Interstate 480. Ohio Highway Trooper Michael Hounsel was stationed in the parking lot of Cabinets Granite and observed the Defendant make a U-turn in front of the "No U-turn" sign. The trooper pulled the Defendant over and cited him for disobeying a traffic control device in violation of O.R.C.4511.12, which states:
§ 4511.12 Obeying traffic control devices.
(A) No pedestrian, driver of a vehicle, or operator of a streetcar or trackless trolley shall disobey the instructions of any traffic control device placed in accordance with this chapter, unless at the time otherwise directed by a police officer.
No provision of this chapter for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person. Whenever a particular section of this chapter does not state that signs are required, that section shall be effective even though no signs are erected or in place.
Defendant testified and admitted he made the U-turn. Defendant described the area in which he made the U-turn. He stated West 130th Street is a divided street with a grassy green island which separates the north and southbound lanes. He further described the island has an opening at the front and back. However, there is only one "No U-turn" sign erected at the top of the grassy island. He presented a drawing of the area which showed a median strip in front of the island with no sign. The Defendant stated that there is not a "No U-turn" sign in front of the opening where he turned. The sign is behind the opening. The Defendant argued that the "No U-turn" sign was intended for the back opening of the island.
The Defendant stated, "according to the Ohio Manual on Uniform Traffic Control Devices (OMUTCD) Section 2B.18, signage for left turns and U-turns are supposed to be before the intersection." The trooper further explained Defendant's position and stated, "He turned at the intersection prior to the sign. Because it's a double intersection area, so he turned prior to the sign and there is a second section." The trooper further stated, "We've had people lose trials because they say the sign is for the first one (intersection)."
In short, drivers who make U-turns at both intersections have been cited and convicted for violating the one "No U-turn" sign. The issue is whether the Defendant can avoid conviction of the U-turn violation by his affirmative defense that the sign was not properly erected. Consequently, before the Defendant can be convicted, the court must find the sign was properly erected.
Prior to addressing Defendant's affirmative defense of violating 4511.12, it is helpful to state the statutory requirements in the erection of traffic control devices. Traffic laws and regulations are *771 created to promote highway safety.[1] The Department of Transportation has the responsibility to adopt a manual and specifications for a uniform traffic control devices system.[2] All traffic control devices erected on a public road, street or alley shall conform to the state manual and specifications.[3] OMUTCD requires uniformity in the form, placement and erection of signs.[4] This uniformity ensures that all traffic signs are installed pursuant to the same general standards to ensure they are seen and recognized by the typical, ordinary observant driver.[5]
Clearly, the statutory requirements were created to eliminate confusion for drivers. It is difficult to enforce a traffic law or regulation that is not clear to drivers. From the testimony of both the Defendant and trooper, drivers were confused about which intersection the sign regulated. "The functions of traffic control devices are to provide regulations, warnings and guidance information for road users."[6] To be effective, these devices should meet five basic requirements: "(A) Fulfill a need; (B) Command attention; (C) Convey a clear, simple meaning; (D) Command respect from road users; and (E) Give adequate time for proper response."[7]
A "No U-turn" sign is a movement prohibition sign governed by Section 2B.18 of the OMUTCD. Movement prohibition signs should be placed where they will be most easily seen by road users who might be intending to make the movement.[8] "No U-turn" signs are to be placed at locations specified for "No Left Turns".[9] Pursuant to the manual, if "No Left Turn" signs are used, at least one should be placed either over the roadway, at the far left-hand corner of the intersection, on a median, or in conjunction with the STOP sign or YIELD sign located on the near right-hand corner.[10]
A driver is required to obey all traffic control devices, except such devices that are not properly positioned and sufficiently legible to be seen by ordinary observant persons.[11] "Once it has been demonstrated that a traffic control device exits in a specific location, an inference arises that the traffic control device was placed pursuant to lawful authority."[12] Given the inference that the sign has been placed properly, the burden switches to the defendant to rebut the inference that the sign *772 was placed in compliance to the OMUTCD.[13] The defendant's rebuttal of this inference is considered an affirmative defense.[14] The prosecution then has the ultimate burden to prove the sign is compliant with OMUTCD. Consequently, a motorist can escape punishment when a traffic control device is not properly placed notwithstanding the fact it is legible.[15]
The determinative question is whether the "No U-turn" sign was erected in compliance with OMUTCD. The manual requires the "No U-turn" sign to be placed in the median, which it is. However, the street is divided and the median is divided, which creates two intersections. The placement of one sign causes a driver to guess which intersection the sign regulates. Now certainly, the train of thought could be, if in doubt, the answer is the traffic control device governs. However, one should not have to guess. This intersection is the path for a driver to access Interstate 480 from a divided street. Since drivers are permitted to make U-turns, prohibition of making the turn should be clear. If the intent of the Department of Transportation is to prohibit U-turns at both openings, then a no "U-turn" sign should be erected at both. Given the position of the sign, this court finds it is not properly positioned to prohibit a U-turn at the opening where the Defendant turned. The court accepts Defendant's affirmative defense that the sign was not properly erected. Therefore, this court finds Defendant not guilty.

City of Painesville v. Kincaid , 2015-Ohio-5532, 57 N.E.3d 152, ¶ 9 (11th Dist.) citing Maple Heights v. Smith , 131 Ohio App.3d 406, 408, 722 N.E.2d 607 (8th Dist. 1999) and City of Lyndhurst v. McGinness , 138 Ohio App.3d 617, 620, 741 N.E.2d 976 (8th Dist. 2000).

Painesville citing R.C. 4511.09 and Maple Heights at 408, 722 N.E.2d 607 ; and Lyndhurst at 620, 741 N.E.2d 976 citing R.C. 4511.09.

Lyndhurst at 620, 741 N.E.2d 976 citing R.C. 4511.11(D).

Lyndhurst at 620, 741 N.E.2d 976 citing R.C. 4511.12.

Id. ,Maple Heights at 408, 722 N.E.2d 607 citing R.C. 4511.12, and Painesville at ¶ 15 citing R.C. 4511.12(A).

Ohio Manual of Uniform Traffic Control Devices § 2A.01.

Ohio Manual of Uniform Traffic Control Devices § 1A.02:02.

Ohio Manual of Uniform Traffic Control Devices § 2B.18:02.

Ohio Manual of Uniform Traffic Control Devices § 2B.18:06.

Ohio Manual of Uniform Traffic Control Devices § 2B.18:04.

Maple Heights at 408, 722 N.E.2d 607 citing R.C. 4511.12 and Painesville at ¶ 15.

Painesville at ¶ 19.

Id.

Id.

Id.