[Cite as *State v. Jackson*, 2019-Ohio-4206.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|                          |   |                          |
|--------------------------|---|--------------------------|
| STATE OF OHIO,           | : |                          |
| Appellee,                | : | CASE NO. CA2019-06-093   |
|                          | : | O P I N I O N            |
| - vs -                   |   | 10/14/2019               |
|                          | : |                          |
| LISA BERNING JACKSON,    | : |                          |
| Appellant.               | : |                          |

CRIMINAL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. TRD 1901398

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Lisa Berning Jackson, 1723 Ella Street, Cincinnati, Ohio 45223, pro se

**S. POWELL, J.**

{¶ 1}   Appellant, Lisa Berning Jackson, appeals her conviction in the Butler County Area III Court for failing to obey a traffic control device by executing an impermissible right-hand turn on red in violation of R.C. 4511.12(A).[1]  For the reasons outlined below, we affirm.

{¶ 2}   On March 31, 2019, a complaint was issued charging Jackson with one count

---

1. Pursuant to Loc.R. (6)(A), we sua sponte remove this appeal from the accelerated calendar for the purpose of issuing this opinion.

of disobeying a traffic control device in violation of R.C. 4511.12(A), a minor misdemeanor. The complaint was issued after Ohio State Highway Patrol Sergeant Jeffrey Staples observed Jackson make an impermissible right-hand turn from the left of the two right-turn lanes on the southbound I-75 exit ramp to Union Centre Boulevard. There is no dispute that at the time Jackson made that right-hand turn that the traffic light positioned above that intersection was red. There is also no dispute that positioned above that intersection was a sign that read NO TURN ON RED EXCEPT CURB LANE. The no turn on red sign, which was located a few feet to the right of the rightmost traffic light, generally appeared as follows:[2]



**{¶ 3}** On April 30, 2019, the matter was tried to the bench. At trial, the only witness to testify was Sergeant Staples. As part of his testimony, Sergeant Staples testified that both he and Jackson were traveling southbound on I-75 just prior to exiting the freeway at the Union Centre Boulevard exit. Upon exiting the freeway, Jackson was "in the left of the two right-turn lanes," while Sergeant Staples was in the right lane closest to the curb. Upon coming to a stop at the red traffic light, Sergeant Staples observed Jackson make an impermissible right-hand turn on red in violation of the posted no turn on red sign. Sergeant Staples testified that he observed Jackson make this turn from a distance of approximately one car length behind Jackson's vehicle. A video recording taken from Sergeant Staples' cruiser camera confirms Sergeant Staples' testimony.

---

2. We note that the specific sign posted at the intersection in question has a black line separating the top phrase NO TURN ON RED from the bottom phrase EXCEPT CURB LANE.

{¶ 4} Following this testimony, Sergeant Staples was cross-examined by Jackson. During this questioning, Jackson offered into evidence the Ohio Department of Transportation's Manual of Uniform Traffic Control Devices ("OMUTCD"). After showing the OMUTCD to Sergeant Staples, Jackson asked Sergeant Staples if the OMUTCD contained the exact same no turn on red sign that was posted at the intersection in question. Sergeant Staples responded that although that exact sign was not contained in the OTMUTCD that there was "a variation of it." Specifically, as set forth in OMUTCD Section 2B.54(6) at Figure 2B-27 R10-11c:

```
NO TURN
ON RED
EXCEPT
FROM
RIGHT LANE
```

{¶ 5} After noting the differences between the no turn on red sign at issue and the no turn on red sign contained in the OMUTCD, both the state and Jackson rested. The trial court then heard closing arguments from both parties. During closing, Jackson initially argued, in pertinent part, the following:

> I would like to state that under [R.C.] 4511.12, it states explicitly that [a] traffic signal is unenforceable if it is not in compliance with the manual. The manual does not have the sign in question. It is not an official sign, so it should be unenforceable under state law.

{¶ 6} Upon hearing Jackson's argument, the trial court engaged Jackson in following exchange.

> THE COURT: Well, I'll tell you what my version is on this. And, first of all, what is your argument, Ms. Jackson, about the sign?
>
> THE DEFENDANT: It is not in compliance with the manual as required by state law.
>
> THE COURT: And how so?

THE DEFENDANT: Because there is no sign that states no turn on red except curb lane. That is not a sign that is in the manual, so it's not in compliance with the manual.

* * *

THE COURT: Okay.

THE DEFENDANT: And the other requirement is, also, that the sign be posted closest to the traffic signal, which I did not see the sign. It was way over on the far right when there's a three-way intersection.

{¶ 7} Following this exchange, Jackson then summarized her argument as follows:

Well, I guess logically, I would make the argument that, if the Ohio Department of Transportation has a sign that states no turn on red except right lane, and then it also has a no turn on red from this lane sign, they are anticipating that some points, there will be lanes [that] cannot make a right turn. But if there is no such sign, then you can make a right turn from either lane.

{¶ 8} Once the parties concluded their closing arguments, the trial court took the matter under advisement and subsequently issued a decision finding Jackson guilty as charged. Upon finding Jackson guilty, the trial court imposed no fine but ordered Jackson to pay court costs. Jackson now appeals her conviction, raising the following single assignment of error for review.

{¶ 9} THE TRIAL COURT ERRED IN FINDING THE DEFENDANT-APPELLANT GUILTY OF VIOLATING ORC § 4511.12.

{¶ 10} In her single assignment of error, Jackson argues her conviction for failing to obey a traffic control device in violation of R.C. 4511.12(A) was not supported by sufficient evidence. We disagree.

{¶ 11} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an

- 4 -

appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Erdmann*, 12th Dist. Clermont Nos. CA2018-06-043 and CA2018-06-044, 2019-Ohio-261, ¶ 21, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33.

{¶ 12} As noted above, Jackson was convicted of disobeying a traffic control device in violation of R.C. 4511.12(A). Pursuant to that statute, "[n]o pedestrian, driver of a vehicle, or operator of a streetcar or trackless trolley shall disobey the instructions of any traffic control device placed in accordance with this chapter, unless at the time otherwise directed by a police officer." The statute continues and states, in pertinent part, the following:

> No provision of this chapter for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person.

This "creates a legal excuse for the criminal violation." *White v. Ohio Dept. of Transportation*, 56 Ohio St.3d 39, 43 (1990). Therefore, "R.C. 4511.12 requires a driver of a vehicle to obey all traffic control devices, except such devices as are not properly positioned and sufficiently legible to be seen by ordinary observant persons." *Lyndhurst, v. McGinness*, 138 Ohio App.3d 617, 620 (8th Dist.2000).

{¶ 13} Pursuant to R.C. 4511.11(A), "[l]ocal authorities in their respective

jurisdictions shall place and maintain traffic control devices in accordance with the [OMUTCD]." This applies to all traffic devices "erected on any street, highway, alley, bikeway, or private road open to public travel." R.C. 4511.11(D). The purpose of the OMUTCD "is to promote uniformity and to [ensure] that traffic signs are installed under the same general standards and are able to be seen and recognized by the typical, ordinary observant driver." *McGinness*, 138 Ohio App.3d at 620. "Thus, there is no criminal liability for violation of a traffic control device that is unofficial, i.e., not in conformity with the OMUTCD." *State v. Norman*, 5th Dist. Richland No. 2018 CA 0134, 2019-Ohio-3242, ¶ 20, citing *McGinness* at 621 ("traffic control devices must adhere to the requirements of the manual in order to be official signs that convey criminal liability").

{¶ 14} There is no dispute that the no turn on red sign at issue is a "traffic control device" as defined by R.C. 4511.11(QQ).[3] What is in dispute, however, is whether that sign can be considered "official" in that it conforms with the standards set forth by the OMUTCD. Supporting her claim that there can be no criminal liability for making the right hand turn that she did, Jackson initially argues that there was insufficient evidence to prove the no turn on red sign was "properly positioned" so that it could be seen by ordinary observant persons as required by R.C. 4511.12(A). This, as Jackson argues, renders the no turn on red sign "unofficial" and unenforceable under the OMUTCD. We find no merit to Jackson's claim.

{¶ 15} OMUTCD Section 2B.54(2) provides that, if used, no turn on red signs "should be installed near the appropriate signal head." The record in this case indicates the no turn on red sign was posted at the intersection in question just a few feet to the right of the

---

3. Pursuant to R.C. 4511.01(QQ), the phrase "traffic control device" means "a flagger, sign, signal, marking, or other device used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street, highway, private road open to public travel, pedestrian facility, or shared-use path by authority of a public agency or official having jurisdiction, or, in the case of a private road open to public travel, by authority of the private owner or private official having jurisdiction."

rightmost traffic light. Other than claiming she did not see the sign, Jackson provided no evidence to indicate the sign was not "properly positioned" so as to conform to the standards set forth in the OMUTCD. "[I]f the record contains evidence upon which to base a presumption [that] the traffic device conforms with [the OMUTCD]," such as the case here, "the defendant may demonstrate that it does not." *Lyndhurst v. Dawson*, 8th Dist. Cuyahoga No. 81288, 2002-Ohio-7071, ¶ 13, citing *McGinness*, 138 Ohio App.3d at 620; *State v. Rivera*, 11th Dist. Ashtabula No. 2001-A-0005, 2001 Ohio 4322, 2001 Ohio App. LEXIS 4290, *6 (Sept. 21, 2001). Jackson did not provide any evidence to rebut that presumption. Therefore, because Jackson provided no evidence to indicate the sign was "unofficial" in that it was not "properly positioned" so as to conform with the OMUTCD, Jackson's first argument lacks merit.

{¶ 16} Jackson also argues that there was insufficient evidence to prove the no turn on red sign was in conformity with the OMUTCD since that exact sign was not provided for in the OMUTCD. Jackson is asking this court to require all traffic control devices used throughout this district to strictly comply with the standards set forth in the OMUTCD in order to be enforceable. "[T]here have been divergent appellate rulings as to whether traffic signs must strictly versus substantially comply with the [OMUTCD]." *State v. Najjar-Banks*, 5th Dist. Delaware No. 18 CAC 11 0085, 2019-Ohio-3337, ¶ 42, citing *State v. Millhouse*, 4th Dist. Lawrence No. 94 CA 4, 1995 Ohio App. LEXIS 538, * 9 (Feb. 3, 1995).

{¶ 17} The Eleventh District Court of Appeals applies a strict compliance standard. *See South Russell v. Blair*, 11th Dist. Geauga No. 2005-G-2645, 2006-Ohio-3766, ¶ 44-45 (Grendell, J., dissenting) ("[t]his court has adhered to the strict compliance standard"); *Painesville v. Kincaid*, 11th Dist. Lake No. 2015-L-023, 2015-Ohio-5532, ¶ 21 (applying a strict compliance standard when finding a stop sign did not conform to the OMUTCD where the stop sign was positioned 13 inches below the minimum required height).

{¶ 18} So, too, do the Fifth District and Sixth District Courts of Appeals. *See Bowling Green v. McNamara*, 132 Ohio App.3d 240, 242 (6th Dist.1999) (applying a strict compliance standard when finding a stop sign did not conform to the OMUTCD where the bottom of the sign was "only five feet eleven inches from the ground" when the OMUTCD required the bottom of the stop sign to be "at least 7 feet"); *In re Tolliver*, 149 Ohio App.3d 403, 2002-Ohio-4538, ¶ 14 (5th Dist.) (applying a strict compliance standard when finding an "8 3/4 inch variation" in the height placement of a stop sign invalidated the sign but not the de minimus "1/16 in variation in height and width of the sign"); *but see Mansfield v. O'Donnell*, 5th Dist. Richland No. CA-2826, 1991 Ohio App. LEXIS 4727, *6 (Sept. 26, 1991) (finding appellees were still duty-bound to comply with a stop sign even though the stop sign installation was not in conformity with the OMUTCD).

{¶ 19} As does the Eighth District Courts of Appeals. *See Oakwood Vill. v. Blum*, 8th Dist. Cuyahoga No. 97081, 2012-Ohio-814, ¶ 11-13 (finding "[t]raffic control devices must adhere to the uniform manual to be official signs conveying criminal liability" when finding speed limit sign was not enforceable where "the sign was not posted at the requisite height"); *Maple Heights v. Smith*, 131 Ohio App.3d 406, 408-411 (8th Dist.1999) ("no criminal liability for violation of a traffic control device which is 'unofficial' and not in conformity with the OMUTCD"); *see also State ex rel. Ohio Motorists Assn. v. Masten*, 8 Ohio App.3d 123 (8th Dist.1982), paragraph two of the syllabus ("[w]here a village council enacts an ordinance causing a traffic control device to be erected in a location which does not comply with the statewide uniform standard established by statute, the council is subject to a writ of mandamus ordering it to conform the traffic control device to the uniform standard, because R.C. 4511.11 expressly requires local legislative bodies to erect traffic control devices in accordance with the uniform standard").

{¶ 20} The Ninth District Court of Appeals, however, does not. *See State v. Dove,*

9th Dist. Lorain No. 99CA007511, 2000 Ohio App. LEXIS 4013, *3-4 (Sept. 6, 2000) (holding the OMUTCD "is not mandatory"); *State v. Lechner*, 9th Dist. Summit No. 9430, 1980 Ohio App. LEXIS 14185, *6 (Feb. 13, 1980) ("a stop sign 6.34 feet tall instead of seven substantially complies with height requirements" found in the OMUTCD). Neither does the Fourth District Court of Appeals. *Millhouse*, 1995 Ohio App. LEXIS 538 at *10 ("the stop sign in question does not substantially comply with the OMUTCD requirements").

{¶ 21} Other courts have yet to clearly set forth their positions. *See Bellefontaine v. Reinman*, 3d Dist. Logan No. 8-04-13, 2004-Ohio-4806, ¶ 13 (holding "a sign must be in accordance with OMUTCD in order to qualify as an official sign under R.C. 4511.12" without stating whether a strict compliance or substantial compliance standard applies); *Cincinnati v. Evers*, 63 Ohio Misc. 2d 220, 222 (M.C.1993) (no left turn signs were not enforceable where the signs were not properly placed and "lacked the required red prohibitive markings" without stating whether a strict compliance or substantial compliance standard applies); *see also In re H.C.*, 3d Dist. Shelby No. 17-18-14, 2019-Ohio-441, ¶ 11-14 (finding stop sign was enforceable even though the deputy called to testify "could not say unequivocally that the sign complied" with the OMUTCD); and *State v. Grillot*, 2 Ohio App.2d 81, 83-84 (2d Dist.1964) (reversing conviction for failing to obey a traffic control device where the sign was illegible when the traffic control device was "located twenty feet off the highway" and had "one and one-half inch lettering").

{¶ 22} Our research has not uncovered any case clearly setting forth this court's position on the matter. The closest case is this court's decision in *State v. Walters*, 12th Dist. Warren No. CA2004-04-043, 2005-Ohio-418. In that case, a traffic stop was initiated on appellee's vehicle for making an impermissible left-hand turn in violation of R.C. 4511.12(A). *Id.* at ¶ 2. After a traffic stop of his vehicle was initiated, appellee was arrested and charged with operating a vehicle while under the influence. *Id.* Appellee thereafter

filed a motion to suppress, which the trial court granted. *Id.* at ¶ 3. In granting that motion, the trial court found the stop of appellee's vehicle was improper since the arresting officer "'lacked an objective finding of probable cause as there was no testimony that [appellee] committed an actual violation of the law.'" *Id.* Therefore, as noted by this court, the trial court's decision was "based on its determination that the 'No Left Turn' sign did not conform to the [OMUTCD] as required by R.C. 4511.11." *Id.*

{¶ 23} The state appealed the trial court's decision arguing the trial court erred by granting appellee's motion to suppress. In support, the state argued that the arresting officer's stop of appellee's vehicle was objectively reasonable and did not violate appellee's rights to be free from unreasonable searches and seizures. *Id.*, 2005-Ohio-418 at ¶ 4. Upon review, this court agreed with the state and reversed the trial court's decision granting appellee's motion to suppress. In reaching this decision, this court determined that the arresting officer's stop of appellee's vehicle was not unreasonable given the officer's observations of appellee "turn[ing] left in violation of a clearly visible 'No Left Turn' sign." *Id.* at ¶ 10.

{¶ 24} But, rather than this court's holding that the officer's stop of appellee's vehicle was constitutionally permissible, this court's decision in *Walters* is significant for another reason; this court's finding the no left turn sign did not conform to the standards set forth by the OMUTCD. Specifically, as this court stated when discussing the enforceability of that no left turn sign:

> The "No Left Turn" sign at issue in this case did not conform to the OMUTCD as required by R.C. 4511.11. The sign at issue was a white, rectangular sign with black lettering, stating, "NO LEFT TURN." The "No Left Turn" sign in the OMUTCD is a white, square-shaped sign showing a black arrow pointing left. The arrow is circled in red with a red line slashed through it.
>
> R.C. 4511.12 only outlaws disobeying traffic control devices posted in accordance with R.C. Chapter 4511. Because the

sign at issue did not conform to the OMUTCD, appellee clearly could not have been convicted of disobeying a traffic control device.

*Id.* at ¶ 7-8. This court also stated that "appellee technically did not commit a traffic violation because the sign was not posted in compliance with the OMUTCD[.]" *Id.* at ¶ 10.

{¶ 25} Jackson claims this court's decision in *Walters* indicates this court's intent to apply a strict compliance standard when determining whether a traffic control device conforms to the OMUTCD. This court's decision, however, established only that the traffic control device at issue did not conform to the standards set forth by the OMUTCD so as to support a conviction for failing to obey that traffic control device. This leaves unanswered the question of whether this court found the no left turn sign failed both strict compliance test *and* the substantial compliance test. Therefore, faced with what appears to be an issue of first impression in this district, we now clearly set forth our position and hold that a substantial compliance standard rather than a strict compliance standard applies when determining whether a traffic control device conforms to the standards set forth by the OMUTCD.

{¶ 26} In so holding, we find significant the Ohio Supreme Court's decision in *Mansfield v. Carman*, 159 Ohio St. 558 (1953). In *Carman*, the appellee admittedly disregarded and ran through a red traffic light. *Id.* at 559. At trial, appellee defended his actions by claiming the traffic light "did not operate so as to comply with the provisions of Section 6307-13, General Code, and with the opening paragraph of Section 12 of the Mansfield Traffic Code[.]" *Id.* Those provisions provided, in pertinent part, that "[w]henever traffic is controlled by traffic-control signals" that the traffic control signal should exhibit "different colored lights successively one at a time[.]"

{¶ 27} The traffic light at issue, however, did not exhibit the three different colors "successively one at a time." The traffic light instead "exhibited the three colors, as follows:

Green light alone, 24.3 seconds; green light and yellow light concurrently, 2.7 seconds; red light alone, 27 seconds." *Id.* Therefore, because "the yellow light [was] not exhibited by itself but [was] exhibited concurrently with the green light and immediately before the change to the red light," appellee claimed that he could not be found guilty of running the red light at issue. *Id.* at 559-560. Specifically, appellee argued "that the ordinance requires the yellow light to be exhibited by itself, and, consequently, that the entire traffic signal unit is illegal and need not be observed." *Id.* at 561.

{¶ 28} The Ohio Supreme Court disagreed with appellee's claims and instead found:

> It is our opinion that the traffic signal as a unit does *substantially comply* with the requirements of Section 6307-13, General Code, and Section 12 of the Mansfield Traffic Code, but in any event the defendant admittedly disregarded and ran through the red light and he is, therefore, guilty of the violation charged.

(Emphasis added.) *Id.* at 562.

{¶ 29} The Ohio Supreme Court thereafter explained its rational for applying a substantial compliance standard rather than a strict compliance standard as follows:

> It would be an anomalous situation if one approaching a traffic signal could say, "that signal is not erected strictly in conformity with the requirements of the statute and the traffic ordinance and, therefore, I can disregard it." If the defendant in this case could run through the red light in this instance with impunity, traffic lights all over the state of Ohio would become practically meaningless and traffic hazards would be tremendously increased. In this particular instance a collision occurred at this crossing by reason of the defendant's deliberately ignoring the red light. If he is to prevail in this action, traffic lights would invite rather than avert accidents.

*Id.*

{¶ 30} Therefore, as set forth in its syllabus, the Ohio Supreme Court held:

> Where the lights which constitute a traffic-control-signal unit are exhibited thus, green light alone 24.3 seconds, green light and yellow light concurrently 2.7 seconds, and red light alone 27 seconds, *such traffic-control signal substantially complies* with the requirements of Section 6307-13, General Code, and with

- 12 -

its counterpart contained in Section 12 of the Traffic Code of Mansfield, Ohio[.]

(Emphasis added.)  *Id.* at paragraph one of the syllabus.

**{¶ 31}** Although dealing with a law in effect prior to the enactment of the Ohio Revised Code, we find the Ohio Supreme Court's rational set forth in *Carmen* applies to the case at bar.  Just as the Ohio Supreme Court found in *Carmen*, to require a strict compliance standard rather than a substantial compliance standard would allow drivers traversing throughout this district to ignore with impunity any traffic control device that did not strictly comply with the standards set forth by the OMUTCD.  This would hold true even though the traffic control device was properly positioned, legible, and clear in its directive.  When considering the slight differences between the no right hand turn sign posted at the intersection in question with the no turn on red sign set forth in the OMUTCD, this case presents a clear example as to why a substantial compliance rather than a strict compliance standard should apply.

**{¶ 32}** Although R.C. R.C. 4511.11(A) requires local authorities in their respective jurisdictions to "place and maintain traffic control devices in accordance with the [OMUTCD]," the statute must nevertheless be "interpreted in accordance with the rules of logistic (sic) reasoning." *Painesville v. Kincaid*, 11th Dist. Lake No. 2015-L-023, 2015-Ohio-5532, ¶ 17.  Despite Jackson's arguments otherwise, we find logic dictates finding a substantial compliance standard applies when determining whether a traffic control device conforms to the OMUTCD.  Therefore, because the record contains uncontroverted video

evidence that proves Jackson disobeyed a properly positioned traffic control device that was sufficiently legible to be seen by ordinary observant persons when she executed an impermissible right-hand turn on red in violation of R.C. 4511.12(A), Jackson's single assignment of error lacks merit and is overruled.

{¶ 33} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.